**1050 TENANTS CORP. et al.,
Plaintiffs-Appellees,**

v.

**Peter JAKOBSON et al., Defendants-Appellants.**

**No. 1003, Docket 74-1023.**

United States Court of Appeals,
Second Circuit.

Argued May 22, 1974.

Decided July 8, 1974.

in the Southern District of New York, Charles E. Stewart, Jr., District Judge, 365 F.Supp. 1171, denying defendants' motion to dismiss, for failure to state a claim upon which relief can be granted and for lack of subject matter jurisdiction, a complaint in an action brought to recover damages for alleged violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j (b) (1970), Rule 10b–5 promulgated under the 1934 Act, 17 C.F.R. § 240.10b–5 (1973), and Sections 12(2) and 17(a) of the Securities Act of 1933, 15 U.S.C. §§ 77*l*(2) and 77q(a) (1970),[1] in connection with the promotion and sale of shares of stock of a cooperative housing corporation, the sole issue is whether such stock is a "security" within the meaning of Section 2(1) of the 1933 Act, 15 U.S.C. § 77b(1) (1970), and Section 3(a)(10) of the 1934 Act, 15 U.S.C. § 78c(a)(10) (1970).

We affirm essentially for the reasons set forth in the well reasoned opinion of Judge Stewart below and upon the authority of our recent decision in Forman v. Community Services, Inc., 500 F.2d 1246, 1250–55 (2 Cir. 1974).

## I.

In view of the detailed statement of facts in the district court opinion, it is sufficient for our purpose briefly to summarize only those facts necessary to an understanding of our rulings on the legal issues presented.

Plaintiffs are the 1050 Tenants Corp. (1050 Corp.), a cooperative housing corporation located at 1050 Park Avenue, New York City, and Herbert and Joan Saltzman, purchasers and holders of cooperative shares in 1050 Corp. The Saltzmans sue on behalf of themselves and as representatives of a class consisting of all past and present 1050 Corp. shareholders. Defendants are the sponsors and promoters of the cooperative

Martin I. Kaminsky, New York City, (Richard M. Asche and Pollack & Singer, New York City, on the brief), for plaintiffs-appellees.

Lawrence A. Kobrin, New York City, (Paul C. Kurland and Emil, Kobrin, Klein & Garbus, New York City, on the brief), for defendants-appellants.

Before SMITH and TIMBERS, Circuit Judges, and TYLER, District Judge.*

TIMBERS, Circuit Judge:

On this appeal, pursuant to 28 U.S.C. § 1292(b) (1970), from an order entered

---

* Hon. Harold R. Tyler, Jr., of the Southern District of New York, sitting by designation.

1. The complaint also alleged violations of New York's blue sky laws and related common law claims. In view of the ground of our decision, we do not reach these claims.

plan pursuant to which 1050 Corp. was organized and its shares were offered and sold to the public.

The gravamen of the complaint is that defendants violated various antifraud provisions of the federal securities laws by making materially false and misleading statements and by failing to disclose material facts in connection with the offer and sale of cooperative shares of 1050 Corp. Defendants contend that the offer and sale of these shares were of interests in real estate, not of "securities".

In 1968, defendants were the fee owners of a building at 1050 Park Avenue. They undertook a plan to convert the building to cooperative ownership. They formed 1050 Corp. Pursuant to N.Y.Gen.Bus.Law § 352–e (McKinney 1968), they made a public offering of its corporate stock by a formal prospectus (the Plan). Among other matters, the Plan set forth a detailed description of the building, appraisals of the condition of its physical plant and an outline of the corporation's capital structure.

The corporation has an authorized capital of 45,000 shares, $1.00 par value. Of the authorized shares, 42,400 were allotted to 60 residential apartments according to the selling price of each. Pursuant to the Plan, some apartments were not offered for residential use, but are rented out as doctors' offices. The income from these rentals is used by the corporation to offset and reduce the periodic assessments on the shareholder-tenants for maintenance of the building. Also pursuant to the Plan, the corporation was required to assume certain obligations entered into on its behalf by the promoters. These included management and service contracts and two mortgages.

Unlike a traditional business corporation, the rights and obligations of the shareholders of 1050 Corp. flow, not from their ownership of corporate shares, but from a uniform proprietary lease. Each shareholder is required to execute such a lease. In addition to the usual landlord-tenant covenants, the lease requires each shareholder-tenant to make monthly payments to the corporation of his pro rata share of the expenses of the corporation. It also imposes certain restrictions and prohibitions on the rights of the shareholders freely to sublet their apartments, to assign their leases or otherwise to transfer or encumber their interests in the corporation.

In most material respects, however, 1050 Corp. has the external indices typical of a traditional business corporation. It was formed pursuant to N.Y.Bus. Corp.Law § 402 (McKinney 1963); it has a formal corporate charter and by-laws; ownership interests are represented by certificates of stock; its shareholders have a voice in the corporate decision making process; they elect directors on the basis of one share, one vote; and they are entitled to annual financial statements. In short, the only significant difference between 1050 Corp. and the traditional business corporation is the fact that it was formed and is operated to facilitate home ownership.

The critical question raised by defendants' motion to dismiss the complaint is whether the shares of stock in 1050 Corp. are "securit[ies]" under the federal securities laws. The district court held that they are. We agree.

### II.

 Section 3(a)(10) of the 1934 Act, 15 U.S.C. § 78c(a)(10) (1970), provides in pertinent part:

"The term 'security' means any . . . stock . . . investment contract . . . or in general, any instrument commonly known as a 'security' . . . ."[2]

---

2. The definition of "security" in the 1933 Act, 15 U.S.C. § 77b(1) (1970), is " 'virtually identical' and interchangeable with that in the 1934 Act." Forman v. Community Services, Inc., *supra*, 500 F.2d at 1250–51, citing Tcherepnin v. Knight, 389 U.S. 332, 335–36 (1967), and Glen-Arden Commodities, Inc. v. Costantino, 493 F.2d 1027, 1034 n. 6 (2 Cir. 1974).

In Forman v. Community Services, Inc., *supra*, 500 F.2d at 1251–55, we held that a share of stock in a non-profit cooperative housing corporation, which was chartered, promoted and subsidized under New York's Mitchell-Lama Act, N.Y. Private Housing Finance Law §§ 10–37 (McKinney 1974 Supp.), and was supervised by the State Housing Authority, was both "stock" and an "investment contract" under § 3(a)(10). In the instant case, we believe that an even more compelling showing has been made than in *Forman* for including the cooperative shares of 1050 Corp. within the ambit of § 3(a)(10) and thus making available the protection of the antifraud provisions of the federal securities laws.

First, we ground our decision on what has been characterized as the "literal approach". Forman v. Community Services, Inc., *supra*, 500 F.2d at 1252, and authorities there cited. 1050 Corp., is not affected by any of the state supervisory or eleemosynary factors on the basis of which the defendants in *Forman* sought unsuccessfully to distinguish shares in that cooperative corporation from those in a traditional business corporation. The structure of 1050 Corp. is more closely analogous to that of corporations whose stock unquestionably is a "security". Defendants have failed to persuade us why the 1050 Corp. stock should be treated differently. We hold that the shares of stock in 1050 Corp. are "securit[ies]" under the federal securities laws.

Secondly, we hold, as we did in *Forman*, that the sale of a cooperative share constitutes the sale of an "investment contract" under the three pronged test formulated by the Supreme Court in SEC v. W. J. Howey Co., 328 U.S. 293, 298–99 (1946).[3] The "common enterprise" element is too plain to warrant discussion. As for the requirement that there be an expectation of "profits" or "economic inducements", SEC v. C. M. Joiner Leasing Corp., 320 U.S. 344, 353 (1943), the three elements found to have been sufficient in *Forman* are present here: (1) the shareholder-tenants of 1050 Corp. benefit directly from substantial non-residential income which is used by the corporation to reduce the monthly carrying charges;[4] (2) they are afforded an opportunity to make substantial savings on their personal income tax in the form of deductions for their payment of a proportionate share of the corporation's deductible expenses; and (3) they stand to benefit from obtaining the optimum services at the lowest possible cost. In addition, there is a "profit" element here that was notably absent in *Forman*: the shareholder-tenants of 1050 Corp. have the expectation of capital appreciation on a resale of their stock. Finally, the requirement that expectations of profit derive "solely from the efforts of the promoter[s] or a third party", 328 U.S. at 299,[5] is clearly satisfied here.

In short, we hold that a share in 1050 Corp. is both a "stock" and an "investment contract" under the federal securities laws.

Affirmed.

---

3. The *Howey* formulation is as follows:
 "[A]n investment contract for purposes of the Securities Act means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party . . . ." SEC v. W. J. Howey Co., *supra*, 328 U.S. at 298–99.

4. Non-residential use income from the rental of doctors' offices was projected in the Plan to total $24,500 annually or approximately 6% of the anticipated annual maintenance budget.

5. Even if the shareholder-tenants of 1050 Corp. were to assume some small role in the management of the venture, that alone would not defeat the *Howey* "reliance" requirement. E. g., Lino v. City Investing Co., 487 F.2d 689, 692 (3 Cir. 1973); Nash & Associates, Inc. v. Lum's of Ohio, 484 F.2d 392, 395 (6 Cir. 1973); SEC v. Glen Turner Enterprises, Inc., 474 F.2d 476, 482 (9 Cir.), cert. denied, 414 U.S. 821 (1973). See Securities Act Release No. 5211 (Nov. 30, 1971), reported in 1971–72 Transfer Binder, CCH Fed.Sec.L.Rep. # 98446.