**Max GRENADER et al., Plaintiffs,**

v.

**Milton SPITZ et al., Defendants.**

**No. 72 Civ. 3784.**

United States District Court,
S. D. New York.

March 5, 1975.

Charles Marks, New York City, for plaintiffs.

Blumenthal, Barandes, Moss, Matson & Arnold, New York City, for individual defendants.

Weil, Gotshal & Manges, New York City, for defendants Three Forty Five Management Company and 34557 Tenants Corp.

## MEMORANDUM

STEWART, District Judge:

This action was brought by various tenants in an apartment building located at 345 East 57th Street, New York, New York, which has been converted to a cooperative housing corporation. Plaintiffs challenge the offering statement and plan pursuant to which shares in the apartment were sold. They allege that the defendant partnership, sponsor and promoter of the cooperative plan pursuant to which the corporation was organized and shares offered and sold, violated provisions of federal [1] and state [2] securities laws and regulations by failing to register the shares sold with the Securities and Exchange Commission, by making false and misleading statements and material omissions in connection with and in the course of issuance of the shares, and by failing to obtain subscriptions by the necessary number of tenant participants by the offering's deadline.[3]

■ Defendants Milton Spitz, Henry Spitz, and Jerome Spitz sued individually and as a partnership doing business as Three Forty Five Management Co., and defendant 34557 Corporation, the tenant corporation formed when the plan became effective, allege as affirmative defenses that the cooperative plan was exempt from the registration requirements of the Securities Act of 1933, and that therefore this court is without subject matter jurisdiction over the pendent state claims. Various tenants of the apartment building, who are also defendants, allege as affirmative defenses that this court is without subject matter jurisdiction over the entire action and that this action is further barred by the pendency of a prior action in the New York State Supreme Court based on the same set of facts.[4]

Plaintiffs now move for partial summary judgment contending there are no genuine issues of fact to be decided as to the first, third and fourth causes of action. Essentially, plaintiffs argue that as a matter of law the shares offered by the sponsor constituted securities required to be registered under § 5 of the Securities Act of 1933 and did not constitute an exempt intrastate offering under § 3(a)(11) of the 1933 Act. With respect to the first and third causes of action, plaintiffs also argue that the purportedly misleading statements and omissions in the defendant sponsor's offering statement and amendments are so clearly material that summary judgment is warranted as a matter of federal and state securities law. The final contention, plaintiffs' fourth cause of action, is that the requisite level of tenant participation in the cooperative plan was not timely obtained, and hence the whole plan must fail.

■ This court finds that subject matter jurisdiction over this controversy is properly predicated upon § 22 of the Securities Act of 1933 [5] and upon § 27 of the Securities Exchange Act of 1934 [6] as construed by the recent Second Circuit decision in 1050 Tenants Corp. v. Jakobson, 503 F.2d 1375 (2d

---

1. The first cause of action alleges violations of Sections 5 and 17 of the Securities Act of 1933, 15 U.S.C. §§ 77e and 77q; Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b-5 (17 C.F.R. § 240.10b-5) ("the federal causes of action").

2. The third cause of action ("the pendent state claims") alleges violations of § 352-e(1) (a) and (b) of the New York General Business Law, McKinney's Consol.Laws, c. 20.

3. The second cause of action, alleging the commission of a common law tort, is not part of this motion.

4. We dismiss the affirmative defense of the individual defendants that this action is barred by the pendency of a similar action in the New York state courts. Atlantic Coast Line R.R. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 295-96, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970); Kline v. Burke Construction Co., 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226 (1922); Friedman v. N.B.C. Motorcycle Imports, Inc., 452 F.2d 1215, 1217 (2d Cir. 1971).

5. 15 U.S.C. § 77v.

6. 15 U.S.C. § 78aa.

Cir. 1974). Since there is subject matter jurisdiction with regard to the federal cause of action, we may, in our discretion, retain jurisdiction over pendent state causes of action derived from "a common nucleus of operative fact." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). *See also* Almenares v. Wyman, 453 F.2d 1075, 1083–86 (2d Cir. 1971), cert. denied, 405 U.S. 944, 92 S.Ct. 962, 30 L.Ed.2d 815 (1972); Drachman v. Harvey, 453 F.2d 722, 737–38 (2d Cir. 1972) (rehearing *en banc*).

■ We also find that the moving affidavits submitted in connection with this motion are sufficient to comply with the provisions of Rule 56(e) of the Federal Rules of Civil Procedure, despite defendants' assertions to the contrary. Rule 56(e) states in pertinent part that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Defendants assert that plaintiffs failed to comply with this rule in submitting an affidavit by their attorney allegedly not based on personal knowledge and a second affidavit by plaintiff H. Victor Schwimmer, who declared that the attorney's affidavit is "true." Plaintiffs' attorney responds that his affidavit was based on personal knowledge of the documents, events, and admissions in question, although his moving affidavit did not so state. Furthermore, plaintiffs' attorney argues that, in any event, the corroborative affidavit by Schwimmer passes muster under Rule 56(e), since it was based on personal knowledge.

■ We accept plaintiffs' attorney's statement that his affidavit was based on personal knowledge, and thus distinguish Mercantile Nat. Bank at Dallas v. Frank-

lin Life Ins. Co., 248 F.2d 57, 59 (5th Cir. 1957), cited by defendants, since in that case moving affidavits by attorneys were not based on personal knowledge. Rather, we agree with the court in Inglett & Co. v. Everglades Fertilizer Co., 255 F.2d 342, 349 (5th Cir. 1958) that it is permissible, though not advisable, for an attorney to present his own affidavit in support of a motion for summary judgment.[7]

### First Cause of Action

Plaintiffs' first cause of action alleges, *inter alia*, that the defendant sponsor was required to register its offering with the Securities and Exchange Commission pursuant to § 5 of the Securities Act of 1933 and failed to do so. Defendants Milton, Harry, and Jerome Spitz and defendant 34557 Corporation concede that their offering was not registered but argue as an affirmative defense that the offering falls within the § 3(a)(11) exemption from registration since it was made by a New York "issuer" and shares were sold only to New York residents. Section 3(a)(11) exempts from registration and prospectus requirements of the 1933 Act:

> Any security which is part of an issue offered and sold only to persons resident within a single State or Territory, where the issuer of such security is a person resident and doing business within or, if a corporation, incorporated by and doing business within, such State or Territory.[8]

Plaintiffs have moved to strike the defendant sponsor's affirmative defense based on Section 3(a)(11) of the 1933 Act, contending that the issuer partnership is not a "person" resident within New York, that the issuer does business outside of New York, and that some of the purchasers were nonresidents.

Plaintiffs' contention that this exemption does not apply is based initially

---

7. The inappropriateness of an attorney submitting an affidavit in support of a summary judgment motion is abundantly clear in the instant case, where plaintiffs' attorney's affidavit occasionally strays from a recitation

of the facts to engage in argumentation and citation of legal authorities.

8. 15 U.S.C. § 77c(a)(11) (1970).

on the conceded California residence of partner Jerome Spitz. His lack of New York residence is only dispositive if it is determined that each partner of the issuer must be a resident of the issuing state. If the rule is otherwise, however, a partnership issuer—such as the one here—will be entitled to the intrastate exemption so long as its principal place of business is in the issuing state.

No federal court has ruled on which theory of partnership residency should be applied for purposes of the § 3(a)(11) exemption and commentators considering the subject have disagreed. Professor Louis Loss has suggested that the residence of a general partnership should be that of its principal place of business.[9] A former Associate General Counsel of the Securities and Exchange Commission has suggested, however, that the residence of a general partnership should be the residences of all of its general partners.[10] While the 1933 Act does not define the term "resident," the SEC long construed the term to mean "domiciliary."[11] More recently, the SEC promulgated Rule 147, effective March 1, 1974, which sought to clarify the definition of "resident" under § 3(a)(11). Under Rule 147, when an issuer is a general partnership, its residence is that of its principal place of business.[12] According to two recent commentators, this definition is merely declarative of existing law.[13]

■ We believe that on the basis of the above authorities, the better view is that the residence of a general partnership is that of its principal place of

business. Applying that rule to the instant case, it is clear that the defendant sponsor partnership, Three Forty Five Management Co., falls within the residence requirement for a § 3(a)(11) exemption, since it is conceded that its principal place of business is in New York.

■ Plaintiffs also challenge the defendants' claimed registration exemption on the ground that defendants were not doing business within New York State, because three of the subscription agreements for the cooperative were acknowledged outside of New York. We do not believe plaintiffs have correctly interpreted the "doing business" requirement of § 3(a)(11). As Professor Loss has observed, ". . . the issuer's business need not be *confined* to the state in which it is resident or incorporated."[14]. The mere acknowledgment of three subscription agreements outside New York State, without more, is not sufficient to give rise to the conclusion that the defendant sponsor is not doing business in New York.[15]

■ Plaintiffs' third ground for challenging defendants' right to invoke the intrastate exemption is based on the contention that several of the purchasers of stock in the cooperative "were at the time of the offer or sale [of subscription agreements] or have since become, nonresidents of the State of New York." (Affidavit of Charles Marks, p. 20). Whether purchasing residents must be domiciled in New York, maintain a principal residence here, or merely maintain *a* residence here has not been decided

9. 1 Loss, Securities Regulation 600 (2d ed. 1961) [hereinafter cited as Loss].

10. McCauley, Intrastate Securities Transactions under the Federal Securities Act, 107 U.Pa.L.Rev. 937, 948 (1959).

11. SEC Securities Act Release No. 4434, at 3 (Dec. 6, 1961).

12. SEC Securities Act Release No. 5450 (Jan. 7, 1974).

13. Alberg and Lybecker, "New SEC Rules 146 and 147: The Nonpublic and Intrastate Offering Exemptions From Registration for

the Sale of Securities," 74 Col.L.Rev. 622, 650 (1974).

14. Loss, *supra*, at 601.

15. Plaintiffs also appear to challenge the out-of-state acknowledgment of these three subscription agreements on the ground that the intrastate exemption from registration does not apply if securities are sold to persons not resident in New York. This argument is without merit, however, since out-of-state acknowledgment of subscription agreements does not prove that the subscribers are nonresidents.

by any federal court. However, plaintiffs offer no proof to show that defendants offered any shares to nonresidents, however "resident" is defined.[16] Plaintiffs present no proof that Judith Ann Taft, who allegedly sublet her apartment in New York and became a resident of London, was a nonresident at the time she purchased her shares in the cooperative. Nor have plaintiffs demonstrated that Taft's shares were transferred to a non-New York resident before the date of the closing of the sale of the apartment to the cooperative corporation. Such evidence might demonstrate that upon completion of ultimate distribution of the shares of the cooperative, they were not wholly in the hands of New York residents, in which case the intrastate exemption would not apply. SEC v. Hillsborough Invest. Corp., 173 F.Supp. 86, 88–89 (D.N.H. 1958). In addition, plaintiffs seek to prove that various tenants are not New York residents because individuals of the same name are listed in telephone directories in other states. Obviously, such "evidence" is insufficient to prove that any tenants are nonresidents of New York.

For these reasons, we deny plaintiffs' request to strike the defendants' affirmative defense based on § 3(a)(11), and hold that the defendant sponsor met the requirements of that exception and therefore was exempt from the registration provisions of the 1933 securities act. Our conclusion is buttressed by the fact that the offering here was a local financing done by a local business.[17] The offering was not made to any prospective tenant, but rather primarily to residents in the apartment. The partnership's principal place of doing business was New York and its sole purpose was to create the cooperative housing corporation in New York.

Plaintiffs' first cause of action also alleges violations of § 17 of the Securities Act of 1933 and § 10(b) of the Securities Exchange Act of 1934.[18] Defendants are subject to liability for rescission of securities sales under these sections even though they are exempt from the requirements of registration under § 5 of the Securities Act of 1933. Pawgan v. Silverstein, 265 F.Supp. 898, 900 (S.D.N.Y.1967). See also SEC Securities Act Release No. 4877 (Aug. 8, 1967).

We deny plaintiffs' motion for summary judgment with respect to these sections of the federal securities laws because we find that there are factual issues in dispute, primarily regarding the materiality of certain alleged misrepresentations and omissions in the prospectus, offering plan and its amendments. Whether a misrepresentation or omission in a prospectus is material depends on whether it is something about which "an average prudent investor ought reasonably to be informed before purchasing the security . . ." De-

---

16. While defendants have the burden of proof on the issue of whether they come within the intrastate exemption, SEC v. Ralston-Purina Co., 346 U.S. 119, 126, 73 S.Ct. 981, 97 L.Ed. 1494 (1953); Chapman v. Dunn, 414 F.2d 153, 159 (6th Cir. 1969); SEC v. Culpepper, 270 F.2d 241, 246 (2d Cir. 1959); plaintiffs cannot rebut defendants' prima facie case by mere allegations. In addition, defendants have submitted affidavits of various tenants claimed by plaintiffs to be nonresidents; those affidavits demonstrate that the affiants were either domiciled in New York or maintained their principal residence here at the time they purchased shares in the cooperative.

17. The legislative history of the Act supports the SEC's view that the intrastate exemption was intended to apply only to local financing which could practicably be consummated wholly within a single state where the issuer is doing business and is incorporated. See H.R.Rep.No.85, 73d Cong., 1st Sess. 7 (1933); Op.Gen. Counsel, Securities Act Release No. 1459 (May 29, 1937); SEC Securities Act Release No. 4434 (Dec. 6, 1961).

18. Defendants maintain that it is doubtful whether plaintiffs other than plaintiff Fielder have standing to allege a claim under either Section 17(a) of the 1933 Act or section 10(b) of the 1934 Act. We need not reach this issue, however, since it is conceded that at least one plaintiff has standing.

marco v. Edens, 390 F.2d 836, 840 (2d Cir. 1968), *citing* 17 C.F.R. 230.405(1).[19] And generally, the issue of materiality, "resting as it does upon the reaction of a 'reasonable man,' cannot be decided by summary judgment." Johns Hopkins University v. Hutton, 422 F.2d 1124, 1129 (4th Cir. 1970).

In the instant case, plaintiffs allege that the sponsor's offering statement contains numerous omissions of patently material facts. Plaintiffs maintain that the materiality of the alleged omissions is conclusively demonstrated by the fact that they are purportedly required to be set forth in an offering statement by § 352–e of the General Business Law of New York State.

Specifically, plaintiffs allege that the sponsor's offering statement contained, *inter alia,* the following omissions: (1) failure to state that defendant Jerome Spitz was a resident of California, thus apprising prospective purchasers that the provisions of the federal securities laws would apply to their transaction; (2) failure to state the profits of each of the partners from the sale of shares in the cooperative, although § 352–e(1)(b) of the General Business Law allegedly required such information; (3) failure to state the amount of depreciation of the apartment building, although the same section of the General Business Law requires that the offering statement or prospectus include "the basis, rate and method of computing depreciation;" and (4) failure to include in the third amendment to the offering statement a Letter of Adequacy with respect to the Projected Schedule of Expenses for the First Year of Operation.

Defendants vigorously dispute the importance of these omissions. They contend that their failure to state the residence of Jerome Spitz is immaterial, since the intrastate exemption from registration applies as long as the sponsor partnership's principal place of business is in New York. They also point out that under the regulations established under § 352–e of the General Business Law, the profits of the sponsors need not be stated where the promoter has held continuous control of ownership in the apartment for three years prior to the proposed first offering of cooperative apartments. They maintain that they were not obligated to state their profits since they had continuously controlled the ownership of the apartment building for the requisite three-year period before the offering commenced. Defendants also contend that their failure to state the amount of depreciation was not material on the ground that they indicated in the cooperative plan that depreciation was not a tax deductible item, and was thus of minimal interest to prospective purchasers of securities. Similarly, defendants concede that a Letter of Adequacy was not contained in the third amendment to the offering statement, but maintain that the Letter of Adequacy accompanying the original cooperative plan was sufficient to apprise tenants of the first year's schedule of expenses, and that subsequent amendments reflected significant changes in projected first-year operating expenses.

Since the materiality of these omissions is in dispute, we deny plaintiffs' motion for summary judgment with respect to their federal causes of action.[20]

### Third Cause of Action

Plaintiffs' third cause of action alleges that the offering statement, prospectus or plan and amendments thereto violated

---

19. These cases involve liability under § 12(2) of the Securities Act of 1933 based upon the existence of material omissions referred to therein. The language of § 12(2), however, is similar to that of § 17(a)(2) of the Securities Act of 1933 and Rule 10b–5(2) of the General Rules and Regulations under the Securities Exchange Act of 1934.

20. We also note that Justice Harry B. Frank, in denying a similar motion for summary judgment in a related pending state action, found that there were numerous factual issues in dispute. It is true, however, that he focused on factual issues involving misrepresentations rather than omissions. Grenader v. Lefkowitz, 71 Misc.2d 414, 336 N.Y.S.2d 355 (1972).

§ 352–e(1)(a) and (b) of New York's General Business Law by omitting required material information and by making material misrepresentations. Section 352–e(1)(a) makes it illegal for persons and partnerships, *inter alia*, to make or take part in a sale or offering of securities in New York State, including cooperative interests in realty,

> unless and until there shall have been filed with the department of law, prior to such offering, a written statement or statements, to be known as an "offering statement" or "prospectus" concerning the contemplated offering which shall contain the information and representations required by paragraph (b) of this subdivision . . .

Paragraph (b) then sets forth a comprehensive list of items to be included in offering statements filed with the department of law. Those items, as well as additional information which may be required by rules and regulations prescribed by the attorney general, are designed to "afford potential investors, purchasers and participants an adequate basis upon which to found their judgment and shall not omit any material fact or contain any untrue statement of a material fact."

 In support of this cause of action, plaintiffs maintain that the alleged material misrepresentations and omissions which purportedly violated the federal securities laws also demonstrate a violation of § 352–e(1)(a) and (b) of the General Business Law. Since we have denied plaintiffs' motion for summary judgment on the federal causes of action—predicated upon violations of the state securities law—*a fortiori*, we must deny their motion on this pendent state cause of action. As with the federal causes of action, we conclude that defendants' alleged misrepresentations and omissions of information in their prospectus and offering statement were not so clearly material so as to entitle plaintiffs to judgment as a matter of law.[21]

*Fourth Cause of Action*

The third amendment to the offering statement provided that the plan would not be declared effective unless 51 percent of the tenants had executed subscription agreements "by May 16, 1972." Plaintiffs contend that this term should be construed to cover the period up to and including May 15, 1972, and, when so construed, the whole cooperative plan must fail, since the requisite number of signatures was not obtained until May 16, 1972.

 Defendants characterize plaintiffs' fourth cause of action as "absurd," and contend that it is supported only by argument and statements of belief. In addition, Joel Arnold, an attorney who helped draft the disputed language, states in an affidavit on behalf of the defendants, that the original expiration date of March 16, 1972 was extended by two months until May 16, 1972. According to Arnold, the intent of the drafters was to extend the deadline until May 16, 1972 at 11:59 p. m. Plaintiffs counter that any ambiguities in language should be construed against the party which drafted them. 17 Am. Jur.2d 690. We believe, however, that defendants, with the Arnold affidavit, have raised a question of fact regarding the intent of the parties who drafted the offering statement. This question should be resolved by evidence adduced at trial, not by construing any ambiguities in language against the party which drafted them. Since the question of the intent of the parties is one of fact, United States v. Kansas Gas and Electric Co., 287 F.2d 601 (10th Cir. 1961), we deny plaintiffs' motion for summary judgment on their fourth cause of action.

For the reasons indicated, plaintiffs' motion for partial summary judgment is denied in all respects.

We also grant leave to plaintiffs Susanne Buchner and Davidson Taylor to discontinue their participation in this action.

So ordered.

---

21. See note 20, *supra.*