149 N.J. Super. 329 (1977)
373 A.2d 1002
AMR REALTY COMPANY AND HARRY LIPKIN, APPELLANTS,
v.
STATE OF NEW JERSEY, BUREAU OF SECURITIES, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 9, 1977.
Decided May 5, 1977.
*331 Before Judges MATTHEWS, SEIDMAN and HORN.
Mr. Peter J. Calderone argued the cause for appellants (Messrs. Wilentz, Goldman & Spitzer, attorneys; Mr. Norman Tanenbaum, of counsel and on the brief).
Mr. Sherman T. Brewer, Jr., Deputy Attorney General, argued the cause for respondent (Mr. William F. Hyland, Attorney General of New Jersey, attorney; Ms. Erminie L. Conley, Deputy Attorney General, of counsel).
The opinion of the court was delivered by SEIDMAN, J.A.D.
This appeal is from a final order of the Bureau of Securities which suspended the registration of AMR Realty Company (AMR) as a broker-dealer for a period of 30 days, at the expiration of which the registration was to be revoked unless AMR filed a notice of withdrawal of a principal, or registered an active principal and submitted all necessary forms and fees; and which order directed Harry Lipkin to cease and desist from offering and selling securities except those offered or sold in compliance with the registration or exemption provisions of the New Jersey Uniform Securities Law, N.J.S.A. 49:3-47 et seq.
The order was issued following a hearing before the Bureau, at the conclusion of which the Chief of the Bureau, sitting as the hearing officer, found, among other things, that AMR (1) offered and sold securities (cooperative apartments) while not registered as a broker-dealer, in violation of N.J.S.A. 49:3-56(a); (2) offered and sold securities through an unregistered agent, in violation of N.J.S.A. 49:3-56(b), and (3) failed and refused to file change of status forms for two of its principals, in violation of *332 N.J.S.A. 49:3-59(c). Harry Lipkin was found to have offered and sold securities while not registered as an agent, in violation of N.J.S.A. 49:3-56(a).
Appellants contend on appeal, as they did below, that (1) the cooperative apartment shares sold by them are not securities within the purview of N.J.S.A. 49:3-49(m) and thus the Bureau had no jurisdiction to require them to register as either a broker-dealer or as a securities agent, and (2) even if the Bureau had jurisdiction over the subject-matter, the sanctions imposed were unwarranted and unreasonable.
The record discloses that during a period of time from and after May 1973, when it was not registered as a securities broker-dealer with the Bureau of Securities, AMR sold shares of Riviera Towers Corp., the owner of a cooperative apartment building in West New York. Harry Lipkin, a real estate salesman licensed as such in New York, but not in New Jersey, had sold cooperative apartments in that building as an employee of AMR's predecessor, J.I. Sopher and Co., and continued to do so for AMR until December 1974 or early January 1975, when AMR ceased making sales because of certain legal difficulties which one of the sponsors of Riviera Towers Corp. was having in New York. Lipkin maintained that he was not aware of any statutory requirement to register as an agent with the Bureau of Securities. He also testified that he personally owned 13 units of Riviera Towers which he had purchased as an investment.
In early 1975, according to the testimony of Edward Gray, who was a registered securities agent in New Jersey at the time, a representative of AMR requested him to become a "limited partner" in AMR to enable it to register as a broker-dealer with the Bureau of Securities. He agreed and signed the application form which was then filed with the Bureau. He terminated his relationship with AMR in July 1975 when he began working for a securities company *333 and was fearful of a conflict of interest. It appears that although a change of status statement was filed by him with the Bureau to reflect his resignation, AMR itself neglected to notify the Bureau of the termination. The record also indicates that AMR failed to inform the Bureau that one of its parties had been convicted in New York of selling securities there without being registered as a broker-dealer.
The scheme of New Jersey's regulation of the securities business is fully set forth in Mayflower Securities v. Bureau of Securities, 64 N.J. 85, 88-90 (1973). The law, generally modeled upon the Uniform Securities Act (7 Uniform Laws Annotated, Business and Financial Laws (Master ed. 1970)), requires the registration of all broker-dealers and salesmen (agents) employed by them (N.J.S.A. 49:3-56), in accordance with the procedure contained in N.J.S.A. 49:3-57 and N.J.A.C. 13:47A-1.1 et seq. Sanctions for violations of the statute or rules range from criminal prosecution for a misdemeanor (N.J.S.A. 49:3-70(a)), to the imposition of civil monetary penalties (N.J.S.A. 49:3-70(b)) or the administrative suspension or revocation of the registration, depending upon the nature and seriousness of the infraction (N.J.S.A. 49:3-58).
As noted earlier, appellants contend that the cooperative apartment units which they sold were not securities within the purview of the statute. The Chief of the Bureau acknowledged below that if the shares representing interests in the cooperative apartment did not constitute securities, then there would be no necessity for broker-dealer and agent registration. He held, however, that they did and that the Uniform Securities Law applied.
The term "security" is defined in N.J.S.A. 49:3-49(m) as follows:
* * * [a]ny note; stock; treasury stock; bond; debenture; evidence of indebtedness; certificate of interest or participation in any profit-sharing agreement including but not limited to certificates of interest or participation in real or personal property; collateral-trust certificate; *334 preorganization certificate or subscription; transferable share; investment contract; voting-trust certificate; certificate of deposit for a security; certificate of interest in an oil, gas or mining title or lease; or, in general, any interest or instrument commonly known as a "security," or any certificate of interest or participation in, temporary or interim certificate for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing. * * *
There are no New Jersey cases which consider whether cooperative apartments are securities under our act. However, since N.J.S.A. 49:3-75 provides that
* * * [t]his law shall be so construed as to effectuate its general purpose to make uniform the law of those States which enact similar laws and to co-ordinate the interpretation and administration of this law with related Federal regulations[,]
our resolution of the issue will be aided by a consideration of subparagraph (1) of the Securities Act of 1933, 15 U.S.C.A. § 77b, and reported cases relating thereto. The definition of "security" contained in it is virtually identical with that in our statute, except that in the latter the item, "certificate of interest or participation in any profit sharing agreement," is followed by the words, "including but not limited to certificate of interest or participation in real or personal property."
A "cooperative" generally connotes an apartment building in which the owner holds title to all the premises and grants rights of occupancy to particular apartments by means of proprietary leases or similar arrangements.[1] 4B Powell, Real Property, § 633.1[3] at 774. The organizational structure most commonly employed is the "corporate-proprietary lease form," under which the corporate owner *335 leases specific apartments to the tenant-stockholders of the corporation. While the ownership of corporate shares does not grant one the right of occupancy to an apartment, this being accomplished by a "proprietary lease," the obtaining and continuance of the lease depends upon the lessee's ownership of the requisite number of shares. See Powell, op. cit., § 633.4[1] at 781-782. The term "cooperative" is defined in our statute dealing with the removal of residential tenants as "a housing corporation or association which entitles the holder of a share or membership interest thereof to possess and occupy for dwelling purposes a house, apartment or other structure owned or leased by said corporation or association * * *." N.J.S.A. 2A:18-61.7(c).
The question of whether shares or membership interests in such cooperatives are securities within the meaning of the Federal Securities Act of 1933 has been considered by the United States Supreme Court. In the case of United Housing Foundation, Inc. v. Forman, 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975), reh. den. 423 U.S. 884, 96 S.Ct. 157, 46 L.Ed.2d 115 (1975), a group of tenants in Co-op City, a huge publicly financed cooperative apartment complex in the Bronx, New York City, asserted claims against various defendants, including the owner of the complex, under the fraud provisions of the Securities Act of 1933 and the Securities Exchange Act of 1934 (15 U.S.C.A. § 78a et seq.), contending that they had been misled by the Co-op City information bulletin in their purchase of shares. The federal District Court dismissed the complaint on the ground that the purchases involved were not security transactions within the contemplation of the federal securities laws. 366 F. Supp. 1117 (S.D.N.Y. 1973). The Court of Appeals for the Second Circuit reversed, Forman v. Community Services, Inc., 500 F.2d 1246 (1974), applying the so-called "literal approach" in holding that a share of stock in a cooperative apartment company was a security within the pertinent federal laws, since it was *336 both "stock" and an "investment contract." 500 F.2d at 1252.
The Supreme Court held that those shares were not within the scope of the federal securities laws. It rejected
* * * any suggestion that the present transaction, evidenced by the sale of shares called "stock," must be considered a security transaction simply because the statutory definition of a security includes the words "any * * * stock." [421 U.S. at 848, 95 S.Ct. at 2058]
The court took great pains to describe the shares involved and to compare them with ordinary commercial securities:
To acquire an apartment in Co-op City an eligible prospective purchaser must buy 18 shares of stock in Riverbay for each room desired. The cost per share is $25, making the total cost $450 per room, or $1,800 for a four-room apartment. The sole purpose of acquiring these shares is to enable the purchaser to occupy an apartment in Co-op City; in effect, their purchase is a recoverable deposit on an apartment. The shares are explicitly tied to the apartment: they cannot be transferred to a nontenant; nor can they be pledged or encumbered; and they descend, along with the apartment, only to a surviving spouse. No voting rights attach to the shares as such: participation in the affairs of the cooperative appertains to the apartment, with the residents of each apartment being entitled to one vote irrespective of the number of shares owned.
Any tenant who wants to terminate his occupancy, or who is forced to move out, must offer his stock to Riverbay at its initial selling price of $25 per share. In the extremely unlikely event that Riverbay declines to repurchase the stock, the tenant cannot sell it for more than the initial purchase price plus a fraction of the portion of the mortgage that he has paid off, and then only to a prospective tenant satisfying the statutory income eligibility requirements. [Ibid. at 842-843, 95 S.Ct. at 2055-2056]

* * * * * * * *
* * * These shares have none of the characteristics "that in our commercial world fall within the ordinary concept of a security." HR Rep. No. 85, supra, at 11. Despite their name, they lack what the Court in Tcherepnin [v. Knight] deemed the most common feature of stock: the right to receive "dividends contingent upon an apportionment of profits." 389 U.S. [332], at 339, 88 S.Ct. [548], at 555, 19 L.Ed.2d 564. Nor do they possess the other characteristics traditionally associated with stock: they are not negotiable; they cannot be pledged or hypothecated; they confer no voting rights in proportion to the number of shares owned; and they cannot appreciate in value. In short, the inducement to purchase was solely to acquire subsidized *337 low-cost living space; it was not to invest for profit. [Ibid. at 851, 95 S.Ct. at 2060]
Finally, the court observed that the information bulletin distributed to prospective residents stressed the advantages of residing in a cooperative and "emphasize[d] the `nonprofit' nature of the endeavor." Ibid. at 854, 95 S.Ct. at 2061.
A like result was reached in Grenader v. Spitz, 537 F.2d 612 (2 Cir.1976), cert. den. ___ U.S. ___, 97 S.Ct. 541, 50 L.Ed.2d 619 (1976). Cf. Maplewood Village Ten. Ass'n v. Maplewood, 116 N.J. Super. 372, 379 (Ch. Div. 1971).
The Bureau argues in its brief that since 1964 it has "consistently adhered to the regulatory view that interests or units in cooperative real estate ventures constitute securities within the statutory definition found in N.J.S.A. 49:3-49(m)." It asserts that a construction of a statute adopted by an agency charged with its administration and enforcement "is entitled to great weight and must not be lightly disturbed," and that it is not "woodenly bound to adopt and apply the view now espoused by the Supreme Court in Forman interpreting the federal enactment." We are fully conversant with the long established principle that the interpretation of a statute by the agency responsible for its enforcement is entitled to deference. Passaic Daily News v. Blair, 63 N.J. 474, 484 (1973). But we are in no way bound by such interpretation, for the construction of a statute is a judicial, not an executive function, "and the qualification to the familiar principle that administrative construction should be accorded considerable weight is as well-established as the principle itself." Service Armament Co. v. Hyland, 70 N.J. 550, 561-562 (1976).
Prior to Forman the literal interpretation of shares or interests in cooperation as being securities within the meaning of the federal statutes enjoyed judicial support. See *338 Forman v. Community Services, Inc., supra; 1050 Tenants Corp. v. Jakobson, 503 F.2d 1375 (2 Cir.1974). While Forman is not binding upon us, the Bureau's reluctance to follow it flies in the face of the Legislature's clearly expressed intent that our securities law should be so construed as to "co-ordinate the interpretation and administration of this law with related Federal regulations." N.J.S.A. 49:3-75. See Conroy v. Schultz, 80 N.J. Super. 443, 450 (Ch. Div. 1963). Apart from a rationale which urges us to follow an interpretation for no other reason than it has been so for years, the Bureau does not endeavor to establish that Forman is wrong. Contrary to the view expressed in the Bureau's brief, we discern nothing in the definition of "real estate securities," contained in the Real Estate Syndication Offerings Law, N.J.S.A. 49:3-27 et seq., which warrants a different approach from that in Forman.
We accordingly hold that shares in a housing cooperative which entitle the purchaser to lease an apartment in the cooperative and do not possess the common attributes of stock as enumerated in Forman and Grenader are not securities within the intendment of our Uniform Securities Law. Therefore, one who engages in the business of selling such shares is not required to register with the Bureau of Securities as a broker-dealer or agent, as the case may be.
The hearing officer below sought to distinguish the facts of this case from Forman. In concluding that appellants had not sustained the burden of proving that shares of interests in Riviera Towers were not securities under N.J.S.A. 49:3-49(m), he noted that
* * * [s]hares of Riviera Towers may be sold at a profit. The voting is proportionate to the shares and in fact the interests can be purchased exclusively for investment as Mr. Lipkin testified he had done. (See Grenader et al. v. Spitz et al. [390 F. Supp. 1112], S.D.N.Y. (Sept. 1975)). This is not similar to purchasing other forms of real estate for investment because when cooperatives are purchased, the management of the sponsor in maintaining the building satisfies the requirement of expectation of profit solely through the effort of others found in SEC v. W.J. Howey Co., 328 U.S. 293, 301 [66 S.Ct. 1100, 90 L.Ed. 1244] (1946).
*339 Whether a particular investment constitutes a security depends upon the facts and circumstances of each case. Van Arsdale v. Claxton, 391 F. Supp. 538, 541 (S.D. Cal. 1975). But with the exception of the reference to Lipkin's investment, there is no support in the record for the above findings. There is nothing in the record concerning the characteristics or the transferability of the shares in this case or the expectation of other than incidental profit from the sale or other transfer thereof. Riviera Towers' offering material was not received in evidence at the hearing. While it is true that appellants should have come forward with more detailed proofs to show that the shares in Riviera Towers are similar to those involved in Forman or Grenader, or substantially so, we are nevertheless of the view that the administrative record should be supplemented by a further hearing and the making of additional findings and conclusions based thereon.
We do not mean to imply that if the hearing officer's findings, as set forth above, had factual support, it would necessarily follow therefrom that the Riviera Towers shares were securities within the purview of the Uniform Securities Law. Upon a full presentation of all available data, the ultimate conclusion, one way or the other, would depend upon an application of the principles enunciated in Forman and followed in Grenader. Consideration should be given to the concept that an investment contract (if the Riviera shares should fit within that term) is a transaction "whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party". Securities and Exchange Comm'n v. W.J. Howey Co., 328 U.S. 293, 299, 66 S.Ct. 1100, 1103, 90 L.Ed. 1244 (1946).
We would expect the supplemental findings and conclusions to contain a reasoned explanation of why the shares here in question are (or are not, as the case may be) securities under the Uniform Securities Law. As a word of caution, we note that there are variations in the *340 provisions of articles, bylaws, leases or agreements pertaining to the sale and purchase of shares in a cooperative, voting rights therein, and the transfer of shares by the purchaser. See Annotation, "Transfer of, and voting rights in, stock of co-operative apartment association," 99 A.L.R.2d 236 (1965); 15A Am. Jur.2d, Condominiums and Co-Operative Apartments, §§ 78 et seq. at 908-917. The existence of such variations should be borne in mind in comparing the characteristics of the shares here involved with those in Forman and Grenader.
Since we conclude that the matter must be remanded for further proceedings, we express no opinion at this time on the excessiveness of the penalties imposed.
We accordingly remand the matter to the Bureau of Securities for further proceedings consistent with the foregoing. Jurisdiction is retained. The Bureau shall conduct the further hearing as expeditiously as possible and shall certify to us its findings and conclusions within 45 days from the date hereof. Appellants shall file a supplemental brief and appendix, which may be in letter form, within 15 days from the filing of said certification, and respondent shall file a supplemental brief (and appendix, if desired), also in letter form, within 15 days after receipt of appellants' supplemental brief.
NOTES
[1] "Condominiums" are to be distinguished. In New Jersey, by statute, a "condominium" means "the form of ownership of real property under a master deed providing for ownership by one or more owners of units of improvements together with an undivided interest in common elements appurtenant to each such unit." Condominium Act, N.J.S.A. 46:8B-3(h).