PHILLIP HOFFMAN, TRADING AS THE HOFFMAN IM-PORT AND DISTRIBUTING COMPANY, PLAINTIFF-APPELLANT, v. ERWIN B. HOCK, DIRECTOR OF ALCOHOLIC BEVERAGE CONTROL, AND DIVISION OF ALCOHOLIC BEVERAGE CONTROL, DEPARTMENT OF LAW AND PUBLIC SAFETY, PARK & TILFORD IMPORT CORPORATION, AND PARK & TILFORD DISTILLERS CORPORATION, DEFENDANTS-RESPOND-ENTS.

Argued November 26, 1951—Decided January 21, 1952.

398

400

*Mr. Louis B. LeDuc* argued the cause for the appellant.

*Mr. Emanuel P. Scheck* argued the cause for the respondent, Park & Tilford Distillers Corporation· (*Mr. A. H. Cornish* on the brief; *Messrs. Osborne, Cornish & Scheck,* attorneys).

The opinion of the court was delivered by

ACKERSON, J.   The plaintiff, Phillip Hoffman, trading as the Hoffman Import and Distributing Company, is a licensed distributor or wholesaler of alcoholic beverages in New Jersey.   He has operated either as a wholesaler or retailer in northern New Jersey since 1933.   However, his present business as distributor or wholesaler of liquor under the above mentioned trade name, was begun in Jersey City in 1944. The defendant, Park & Tilford Import Corporation, licensed by New Jersey as a wholesaler and importer of liquor, including nationally advertised brands, was apparently a subsidiary

of and the outlet through which the defendant Park & Tilford Distillers Corporation, a licensed distiller and rectifier of alcoholic beverages in New York, sold and distributed its product in the State of New Jersey. In the summer of 1950, however, the first mentioned corporation was merged with and succeeded by the latter—Park & Tilford Distillers Corporation. Accordingly, relief in this suit is now sought only against the last named corporation which, although primarily a distiller, is also a licensed distributor of its own product in this State and hereafter we may refer to both corporations generally as Park & Tilford or as the defendant.

In the years from 1937 to 1949 Park & Tilford distributed its own products throughout the State directly to retailers through its own salesmen and not through distributors, jobbers or wholesalers, with one exception, a distributor in Monmouth County located at Asbury Park. However, commencing in May, 1949, Park & Tilford began changing this method of direct selling (referred to as a "direct operation") by appointing on a "trial basis" local distributors as its representatives in several areas of the State. At that time it appointed a distributor in Atlantic City to cover the southern end of the State. Later in the same year it appointed two distributors in Trenton for the Mercer County area and in 1950 it appointed a distributor in Phillipsburg to handle the western part of the State in that area. In December, 1949, it authorized the plaintiff, Hoffman, and the Gilhaus Beverage Company to act as its distributors for Hudson County with the understanding that Park & Tilford would also continue direct distribution there by its own salesmen which it proceeded to do. In 1950 the National Wine and Liquor Company was appointed a distributor for Passaic County.

Hoffman's authorization as a distributor was never reduced to writing, no length of time was fixed for its duration and it is conceded that it was only on a "trial basis," although plaintiff maintains that this had reference to sales volume. During the year 1950 plaintiff devoted the major part of his selling effort to the distribution of Park & Tilford's product

with the result that some 960 additional accounts were opened up for those products and his total purchases from the defendant in this period amounted to $308,130.84. Comparison of this figure with the plaintiff's total sales receipts for the year 1950 discloses that he dealt principally in the Park & Tilford product. Nevertheless, Hoffman insists that he lost money in handling it because of initial promotional expenses, which loss he expected to make up by profits accruing in subsequent years.

However, in October of 1950, a policy committee of the sales division of the defendant, Park & Tilford, began to reconsider the method of its distribution and decided to return to its former policy of handling its own product in northern New Jersey without the use of other distributors. Accordingly, in December, 1950, the plaintiff was informed that his distributorship would terminate as of December 31, 1950. At approximately the same time the other distributorships which had been authorized in Hudson and Passaic Counties, on a trial basis, were likewise terminated and Park & Tilford thereafter resumed its prior practice of exclusive and direct sale of its product to retailers in the northern counties of the State, and to date no wholesaler has been appointed to any of the distributorships so terminated. No reason was given for the abrupt termination of the plaintiff's distributorship except that it was based upon "Company policy" prompted by economical considerations and the desire to get the best possible distribution in the State.

After the termination of his distributorship the plaintiff placed two orders with Park & Tilford for specified quantities of its nationally advertised brands of liquor, the first being accompanied by a check to cover payment. Defendant refused to fill these orders and the check was returned. Thereupon plaintiff instituted the present proceeding before the Commissioner (now Director) of the Division of Alcoholic Beverage Control for a determination of the question of whether or not the aforesaid refusals to sell were discriminatory and arbitrary within the intendment of chapter 264 of the Laws

of 1942 (*N. J. S. A.* 33:1–93.1–5), a supplement to the Alcoholic Beverage Act, *R. S.* 33:1–1 *et seq.*, and if found to be so, then for an order requiring the defendant to fill said orders pursuant to the remedy therein provided. The pertinent provisions of the aforesaid supplement are as follows:

"1. There shall be no discrimination in the sale of alcoholic liquors by distillers, importers, and rectifiers of nationally advertised brands of alcoholic liquors to duly licensed wholesalers of alcoholic liquors in this State.

\* \* \* \* \* \* \* \*

2. In the event any distiller, importer, or rectifier shall refuse to sell to any individual wholesaler any amount of alcoholic liquor or comply with the provisions of this act, then the wholesaler shall petition the Commissioner of Alcoholic Beverage Control setting forth the facts and demanding a hearing thereon to determine whether such refusal to sell is arbitrary or not.

\* \* \* \* \* \* \* \*

3. If the Commissioner of Alcoholic Beverage Control is satisfied with the ability of the wholesaler to pay for such merchandise as ordered, he shall order the distiller, importer, or rectifier to complete said sale of alcoholic liquor to the wholesaler.

\* \* \* \* \* \* \* \*

4. In the event the distiller, importer, or rectifier refuses to complete the sale or comply with the terms of the order of the Commissioner, the Commissioner shall issue an order to every licensed wholesaler prohibiting the purchase by such wholesaler of any alcoholic liquor product of the said distiller, importer or rectifier directly or indirectly until there is strict compliance by the distiller, importer, or rectifier with the order of the Commissioner of Alcoholic Beverage Control."

The title of "Commissioner" was changed to "Director" by *L.* 1948, *c.* 439, § 16, *p.* 1712 (*N. J. S. A.* 52:17B–16).

After a hearing the Director, on the basis of the facts hereinabove related, concluded that the refusal of Park & Tilford "to sell its products to the petitioner, and other wholesalers similarly situated, emanated from a *bona fide* decision of its management that its best business policy necessitated that it handle exclusively the distribution of its products in the northerly counties of this State. That \* \* \* where, as here, no unlawful discrimination appears against the petitioner and the refusal to sell is motivated

as aforesaid, the law affords him no relief at my hands."
The Director specifically noted that "* * * the question
whether the petitioner may have any remedy in the civil courts
against the respondent for any alleged breach of the con-
tractual arrangements between them" was not within his
province to decide. Said he, "I am limited by the terms of
the statute * * * to a determination of whether the
'refusal to sell is arbitrary or not.'"

From this adverse determination the plaintiff appealed to
the Appellate Division of the Superior Court and the cause,
while there pending, was certified here on our own motion.

The basic problem thus presented is to ascertain whether
or not the aforesaid supplementary statute, L. 1942, c. 264
(N. J. S. A. 33:1–93.1–5), applies to the factual circum-
stances hereinabove disclosed so as to entitle plaintiff to an
order from the Director requiring the distiller, Park & Til-
ford, to fill plaintiff's aforesaid orders for liquor. This, of
course, requires an inquiry into the intent and scope of the
statute and particularly as to the significance of the words
"discrimination" and "arbitrary" as they are used therein.

The plaintiff's argument assumes two aspects. First, he
contends that the statute itself supplies, without extrinsic
aid, the precise meaning of the foregoing words and the
offense intended to be inhibited thereby. The argument
proceeds by recognizing that section 1, while providing that
"there shall be no discrimination in the sale * * * by
distillers, * * * to duly licensed wholesalers * * *,"
nevertheless, supplies no key to the exact bounds intended by
the word "discrimination." Plaintiff suggests, however, that
the use of the word "arbitrary" in section 2 supplies the
intent that an arbitrary refusal to sell is the "discrimination"
mentioned in section 1, and, while it must still be determined
when a refusal to sell is "arbitrary" and when it is not, the
master key to this problem is supplied by section 3 where
it is provided that the Director, "If * * * satisfied with
the ability of the wholesaler to pay for such merchandise as
ordered, * * * shall order the distiller, * * * to com-

plete said sale  *   *   *." Thus, argues the plaintiff, we are supplied with a clear and definitive meaning of what constitutes an "arbitrary" refusal to sell amounting to the "discrimination" prohibited by section 1 of the statute. This point is summarized in plaintiff's own words as follows: "Knowing that the wholesaler is able to pay for the merchandise ordered, a refusal by the distiller to supply such merchandise is *arbitrary*, and being arbitrary, constitutes the discrimination forbidden by section 1." It is urged that the objective sought to be achieved by the statute is an unrestricted market for the wholesale distributor in return for the substantial license fee that he pays to the State.

Thus, according to the plaintiff's theory of construction, the ability of the wholesaler to pay for the product ordered becomes the sole test of the obligation of the distiller to supply it—assuming only that he has the product to sell—and, when such ability to pay is shown to exist, a refusal to supply such product results automatically in the penalty provided in the act, regardless of any other factor or consideration involved in the case. Where the supply is limited, plaintiff reads into the statute, by implication, an exception not found therein that an equal allocation of the product on hand must be made among the distributors seeking to buy it.

Such a construction is obviously without merit for it completely overlooks the plain duty placed upon the Director by the act to determine whether or not a refusal to sell is arbitrary and discriminatory. Obviously, if the ability of the wholesaler to pay were the sole test intended, there would be no element of discrimination to consider nor of arbitrariness to be determined by a hearing, and such a requirement would become superfluous. Such an interpretation would therefore violate one of the cardinal rules of statutory construction that full force and effect must be given, if possible, to every word, clause and sentence of a statute. *Oldfield v. New Jersey Realty Co.*, 1 *N. J.* 63, 68 (1948). A construction that will render any part of a statute inoperative, superfluous or meaningless, is to be

avoided. 2 *Sutherland, Statutory Construction* (3*d* ed.), § 4705, *p.* 339. Viewed in this light the "ability of the wholesaler to pay," mentioned in section 3 of the statute, is merely an additional requirement to the making of an order for the relief demanded in the event that, under all of the relevant facts, the primary question of arbitrary discrimination, required to be determined by sections 1 and 2, has been decided in favor of the petitioning wholesaler.

The second or alternate phase of the plaintiff's argument is devoted to the contention that even under the general application of the words "discrimination" and "arbitrary," according to the dictionary and case definition thereof, the acts of the distiller herein complained of fall within the interdiction of the supplementary statute. In so arguing the plaintiff seems to proceed upon the theory that the Director is clothed by the statute with broad equitable powers to enjoin any unfair, unjust, overbearing or differential treatment by distillers in the distribution of their nationally advertised brand of liquors and to maintain an absolutely free and unrestricted market for wholesalers who may desire to benefit from the good will built up by the distiller of the brand at the cost of such national advertising even though such distiller may choose to act as his own exclusive distributor. Additionally it is contended that the statute is available for the protection of wholesalers who have developed a market for such a brand of liquor. Specifically it is said that in the instant case the defendant's resumption of its former practice of acting as its own exclusive distributor in the specified territory and refusing to continue the sale of its product to the plaintiff, in effect has resulted in the appropriation of plaintiff's market for such product in violation of the principles of fair dealing which the statute was intended to prevent.

In support of this theory plaintiff attempts to read into the statute the explanatory statement of the purpose of the legislation which was appended to the bill by the sponsor thereof at the time of its introduction in the Legislature.

This statement related that the purpose of the bill was: "\* \* \* to insure an equitable basis for competition between all licensed wholesalers of alcoholic beverages in New Jersey and to prevent any monopolistic freezing out of one wholesaler by another by preventing the sale of certain products to him." It is well settled, however, that such a statement, not being in the nature of a preamble to a statute, is "not to be considered an index of legislative intent in judicial exposition of the enactment." *Raymond v. Township of Teaneck*, 118 *N. J. L.* 109 (*E. & A.* 1936) ; *Flagg v. Johansen*, 124 *N. J. L.* 456, 459 (*Sup. Ct.* 1940) ; *Keyport Steamboat Co. v. Farmers Transportation Co.*, 18 *N. J. Eq.* 13, 24 (*Ch.* 1866), affirmed *Ibid, p.* 511 (*E. & A.* 1866) ; *cf. Bass v. Allen Home Improvement Co.*, 8 *N. J.* 219 (1951).

In any event, it is the legislative intent which ultimately controls and we find nothing in the act, nor for that matter in the aforesaid statement, revealing an intent to give to the Director the broad sweep of power for which the plaintiff contends. The plaintiff, according to his interpretation of the statute, would have the Director pass upon purported equitable, contractual and ethical obligations of the distiller to sell its product to various wholesalers and thus confer upon the Director a duty and power to regulate the distribution of the product far beyond the scope of the terms of the statute itself.

What, then, is the scope of the Director's power ? We think the answer is to be found in the construction of the statute contended for by the defendant, and adopted by the Director in the instant case, namely, that what is prohibited by this legislation is an act of arbitrary discrimination between wholesalers by a distiller in the sale of a nationally advertised product and that in order to grant the relief provided for the Director not only must find that the complaining wholesaler or distributor is able to pay for the product ordered but that the distiller's refusal to sell to him is discriminatory and arbitrary, and the inquiry must be limited solely to such considerations.

Has there been such discrimination here within the intendment of the statute? We think not. We see no evidence anywhere in the statute of an intention to prevent a distiller, importer or rectifier from selling its own product directly to retailers if its business policy so dictates, provided it takes out a wholesale license pursuant to *R. S.* 33:1–2, 9, 11. In the instant case Park & Tilford took out such a license, not because it desired to be an independent wholesaler, but because it could not otherwise, as a distiller, sell its own product directly to retail liquor dealers.

Nor do we find any purpose in the statute to prohibit such a producer from acting as the *exclusive* distributor or wholesaler of its own products. If a contrary purpose were intended it should have been clearly expressed and not left to mere conjecture. "We are enjoined to interpret and enforce the legislative will as written, and not according to some supposed unexpressed intention." *Camden v. Local Government Board,* 127 *N. J. L.* 175, 178 (*Sup. Ct.* 1941); *Burnson v. Evans,* 137 *N. J. L.* 511, 514 (*Sup. Ct.* 1948).

The apparent scope of the statute in question is to be found in section 1 thereof which bars "discrimination in the sale of alcoholic liquors by distillers, * * * of nationally advertised brands" thereof "to duly licensed wholesalers of alcoholic liquors * * *." Thus it is still open to the distiller to sell directly to retail dealers if licensed so to do. It may, of course, sell indirectly through the medium of duly licensed wholesalers, if it so chooses, but in the latter event it may not discriminate between such wholesalers.

In this view it does not matter that here the plaintiff, Hoffman, had developed a market in the area before the distiller took over; that was a matter for contractual protection and involves legal or equitable remedies which, under the plain intent of the statute, the Director was without authority to apply.

Therefore, on the record before us, there was no discrimination within the intendment of the statute. The

defendant, Park & Tilford, made a policy decision to resume its former practice of selling its product directly to retailers and eliminating entirely the use of distributors or wholesalers in the northern part of the State. Accordingly, it terminated the distributorship which it had given to the plaintiff in Hudson County on a trial basis and at the same time summarily terminated all other distributorships which it had created in the northern part of New Jersey. The fact that the distiller, Park & Tilford, still operates through wholesalers in the southern and western parts of the State, whose authorizations are limited to such areas, does not make its action with respect to the crowded northern counties, where retailers are closer together and more easily reached, an arbitrary or unfair discrimination against its former distributors in such counties whose authorizations had been confined thereto.

As the Director properly observed, we are not concerned here with possible remedies, if any, the plaintiff may have relating to fair trade practices or breach of contract, our inquiry being limited solely to the applicability of the statute in question. The arrangement between the parties hereto was on a trial basis and if the plaintiff desired a more substantial agreement to protect his initial investment he should have contracted therefor.

These conclusions render it unnecessary to consider the questions raised by the defendant with respect to the constitutionality of the aforesaid supplemental statute.

The order of the Director of the Division of Alcoholic Beverage Control dismissing the plaintiff's petition (complaint). is accordingly affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD, BURLING and ACKERSON—7.

*For reversal*—None.