291 N.J. Super. 325 (1996)
677 A.2d 289
FRIENDS OF THE DINKY WOODS, NANCY L. BENNETT AND GREGOR Z. HAVKIN, HOWARD E. ELDRIDGE AND BRAITH A. ELDRIDGE, REBECCA A. ISEMAN AND RONALD E. VANGI, STUART H. JOHNSTON AND ALISON JOHNSTON, ALBERT MCGRIGOR, MICHAEL V. PIRONE AND JOANNE E. PIRONE, JAMES MOELLER AND TAMERRA MOELLER AND LORRAINE OSBORNE AND RALPH OSBORNE, PLAINTIFFS,
v.
TOWNSHIP OF WEST WINDSOR AND PLANNING BOARD OF TOWNSHIP OF WEST WINDSOR, DEFENDANTS. MERCER MALL PROPERTY GROUP, PLAINTIFF,
v.
WEST WINDSOR TOWNSHIP, TOWNSHIP COUNCIL OF WEST WINDSOR, AND WEST WINDSOR TOWNSHIP PLANNING BOARD, DEFENDANTS,
v.
HENDON PROPERTY ASSOCIATES, L.P., DEFENDANT-INTERVENOR.
Superior Court of New Jersey, Law Division Mercer County.
Decided January 24, 1996.
*327 Walter R. Bliss, Jr., for plaintiffs Friends of the Dinky Woods, et al. (Mr. Bliss and James F. Scherwin on the brief).
Jonathan I. Epstein, for plaintiff Mercer Mall Property Group (Drinker Biddle & Reath, attorneys; Mr. Epstein, Christine Cartwright, and Charles B. Liebling on the brief).
Gerald J. Muller, for defendant West Windsor Township Planning Board (Miller, Porter & Muller, P.C., attorneys; Mr. Muller on the brief).
Eric M. Bernstein, for defendant Township of West Windsor (Weiner Lesniak, attorneys; Mr. Bernstein on the brief).
Ross A. Lewin, for defendant-intervenor Hendon Property Associates, L.P. (Jamieson, Moore, Peskin & Spicer, attorneys; Mr. Lewin, Mark A. Solomon, Christopher K. Costa and Gregory Mandak on the brief).
CARCHMAN, A.J.S.C.
These consolidated motions for partial summary judgment require a determination as to the methodology to be utilized in calculating the area required to lodge a valid protest to a proposed zoning change under N.J.S.A. 40:55D-63 (the statute). Broadly stated, the statute requires that the owners of 20% of certain land participate in the protest for the protest to be valid, and the statute references a 200 foot distance from the land to be rezoned. The issue presented is whether any area situated outside of the statutory 200 foot protest line is to be considered in the calculation. For the reasons set forth below, this court concludes that only the area encompassed within the 200 foot perimeter is to be considered. The disposition of this procedural issue precludes a determination of the merits of the zoning change.
The facts are not in dispute. In Friends of the Dinky Woods v. Township of West Windsor, Docket # L-5000-94, plaintiffs, Friends of the Dinky Woods (plaintiff or Dinky Woods), an unincorporated association of property owners, together with other *328 property owners brought this action in lieu of prerogative writ challenging West Windsor Township Ordinance 94-55. The ordinance changes existing zoning for a six-acre parcel of property on Mather Avenue in West Windsor Township (defendant or Township). After presentation of a petition executed by the owners of at least 20% of the area solely within the 200 foot line as set forth in the statute, the Township Council determined that the total area of lots any part of which fell within the 200 foot line would be considered in the computation. Based on the Township's calculation, the protestants represented an area falling well below the required 20%.[1] As a result of the Township's determination, the vote the Township deemed required to pass the ordinance was a simple majority of three-to-two rather than a super-majority of four-to-one. On October 24, 1994, the ordinance passed by a vote of three-to-two.
In Mercer Mall Property Group v. Township of West Windsor, Docket # L-4573-95, plaintiff, Mercer Mall Property Group (plaintiff or MMPG), challenged the enactment of West Windsor Ordinance 95-49 which changed the zoning applicable to property immediately adjacent to MMPG's property in an area known as Nassau Park. MMPG filed a protest supported by the owners of 20% of property within 200 feet of the area to be rezoned. Utilizing the same methodology as had been employed in the Dinky Woods case, the Township rejected the protest and adopted the ordinance by a simple majority vote of three-to-two rather than a super-majority of four-to-one.

A.
N.J.S.A. 40:55D-63 provides as follows:
A protest against any proposed amendment or revision of a zoning ordinance may be filed with the municipal clerk, signed by the owners of 20% or more of the area either (1) of the lots or land included in such proposed change, or (2) of the lots or land extending 200 feet in all directions therefrom inclusive of street space, *329 whether within or without the municipality. Such amendment or revision shall not become effective following the filing of such protest except by the favorable vote of two-thirds of all the members of the governing body of the municipality.
While all sides argue that their respective interpretations of this statute are consistent with the legislative intent, they agree with regard to the purpose of the statute. It is to protect the interests of property owners in the stability and continuity of zoning regulations. Levin v. Township of Parsippany-Troy Hills, 82 N.J. 174, 180, 411 A.2d 704 (1980). A zoning change adopted over a valid protest without the requisite two-thirds majority vote is invalid. Id. at 183, 411 A.2d 704.
The parties' proposed methodology for calculating whether the 20% threshold has been met differs significantly. The Township calculates the protest percentage by identifying all lots and land any part of which falls within 200 feet of the boundaries of the property to be rezoned. It then calculates the entire area of each lot owned by the protestants and divides this sum by the total acreage of all lots and land any part of which falls within the 200 foot radius. The municipal tax records are utilized to make these computations. The Township asserts that this represents the "standard practice" throughout the state and provides an accurate method of acreage calculation.
Both plaintiffs  Dinky Woods and MMPG  suggest a more limiting approach. They calculate the protest vote by identifying each owner having a lot or land any part of which lies within 200 feet of the area to be rezoned, but, in making the calculation, they consider only the area or portion of the lot or land which actually lies within the 200 foot perimeter. While the calculation cannot be based exclusively on the tax map acreage designation, the calculation can be made with either a ruler or a measuring device known as a planimeter.
An analysis of the statutory language compels the conclusion that plaintiffs' interpretation of the statute is correct. The Township focuses on the language "area ... of the lots or land", arguing that the use of "land" with "lots" evidences a legislative *330 intent to include the area of all of the property that touches the 200 foot line. Relying on the "cardinal rule of statutory construction that full force and effect must be given, if possible, to every word, clause and sentence of a statute," Hoffman v. Hock, 8 N.J. 397, 406, 86 A.2d 121 (1952); see also Medical Soc'y v. Department of Law and Public Safety, 120 N.J. 18, 26-27, 575 A.2d 1348 (1990) (courts "should try to give effect to every word of the statute"), the Township suggests that plaintiffs' reading of the statute would make the words "lots" and "land" redundant and superfluous, because such a reading could have been accomplished simply by using the word "land" or "area." The Township's reading of the statute is too narrow.
"Lot" is defined as a "designated parcel, tract or area of land established by a plat or otherwise, as permitted by law and to be used, developed or built upon as a unit." N.J.S.A. 40:55D-4. "Land" "includes improvements and fixtures on, above or below the surface." N.J.S.A. 40:55D-4. The use of the words "lots" and "land" in the context of this statute has consistency and meaning as interpreted by plaintiffs. The owners of lots which lie wholly within the 200 foot perimeter are identified by the statute; owners of land not commonly acknowledged as a "lot," such as portions of a lot, are also included in the class to be covered by the statute.
As noted in MMPG's brief, the critical and decisive language is neither the reference to "area" nor the distinction between "lots" and "land," but the phrase "extending 200 feet in all directions." The plain meaning of the phrase describes a limitation rather than an open ended expansion beyond the limits of the "extension."
Notwithstanding the language used in the statute, the interpretation suggested by plaintiffs is consistent with the intent and purpose of the statute. To insure a valid and meaningful protest, the protest should reflect the views of those who would be most directly affected by the proposed zoning change. The methodology suggested by West Windsor artificially skews the ratio for a valid protest against the interests of those most directly affected by the proposed change. The legislative scheme requiring a *331 protest vote consisting of 20% of the area within the 200 foot limit satisfies the legislative objective and leads to a sensible result.
Defendant would have this court read the words "any part thereof" into the statute. The Legislature chose not to include that language and wisely so. To include lots or land "any part of which" is within the 200 foot area would allow a property owner with extensive acreage but having only a salient overlap with the 200 foot area to effectively prevent a protest from being considered. While the record is not entirely clear in the Mercer Mall case, it appears that a single property represents almost fifty percent of the protest-eligible area using defendant's proposed methodology, even though that portion of the property within 200 feet represents an insignificant portion of the total area within 200 feet. To allow the entire piece to be considered requires the protestants to secure the agreement and cooperation of almost 40% of those owners whose property is totally encompassed within the 200 foot zone. Such a result defies the legislative intent as well as logic and common sense. While examples abound on both sides of the issue as to the potential for injustice or inequities, on balance, focusing on and limiting the protest-eligible area to that within 200 feet best serves the legislative intent of this statute.
Defendant argues that the affidavit of John Madden, West Windsor's planner stands unrefuted that the methodology utilized by West Windsor in this case is consistent with that used by other municipalities throughout the state. Defendant asserts that "standard practice" invokes the maxim that the reasonable and practical meaning ascribed by municipal officials to the protest statute is entitled to substantial deference and should prevail over that offered by plaintiffs. Cedar Cove, Inc. v. Stanzione, 122 N.J. 202, 212, 584 A.2d 784 (1991) (meaning ascribed to legislation by administrative agency responsible for its implementation, including the agency's contemporaneous construction, long usage and practical interpretation, is persuasive evidence of the Legislature's understanding of its enactment); Department of Civil Serv. v. Clark, 15 N.J. 334, 341, 104 A.2d 685 (1954) ("the principle is well *332 established by wealth of authority that resort may be had to long usage, contemporaneous construction and practical interpretation in construing statutes, to ascertain the meaning of technical terms, to confirm a construction deduced from the language, to explain a doubtful phrase or where the meaning is obscurely expressed").
Administrative usage may be persuasive but, here, it is not dispositive. When administrative usage conflicts with legislative intent, the former must yield to the latter. Airwork Serv. Div. v. Director, Div. of Taxation, 97 N.J. 290, 478 A.2d 729 (1984), cert. denied., 471 U.S. 1127, 105 S.Ct. 2662, 86 L.Ed.2d 278 (1985).
We note that courts have acknowledged that "the practical administrative construction of a statute over a period of years without interference by the Legislature is evidence of its conformity with the legislative intent and should be given great weight by the courts." [Citations omitted.] Nevertheless, the court will consider this factor only when it is not satisfied that the Legislature's intent cannot otherwise be determined by a critical examination of the purposes, policies, and language of the enactment. When such circumstances point strongly to the imputation of a particular legislative intent, they may not be outweighed or overcome simply by a countervailing administrative practice.
[Id. at 296, 478 A.2d 729.]
While plaintiffs exhibit some skepticism as to whether the factually unsupported statement by Madden is accurate, no further inquiry is required because this court has determined that the language and policy of the statute readily lead to its proper interpretation.
Defendant argues that the legislative scheme of including the total area of all lots any part of which are within the 200 foot perimeter insures certainty as to calculation of area since all that is necessary for calculating total lot area is a reference to tax maps or recorded deeds. The argument suggests that calculating the area of portions of lots requires a complicated and burdensome calculation and leads to uncertainty. The argument is overstated and of limited viability. An instrument known as a planimeter is utilized to determine the area in question. Madden characterizes the cost as "expensive." Plaintiffs counter with an expert affidavit suggesting that the cost is approximately $250. In any event, determination of the relevant area can be made with limited *333 expense and with sufficient certainty to insure that legitimate protestants can be heard and their protest honored.
Lastly, statutes are to be read with a modicum of common sense to insure that the purpose of the Legislature is upheld and preserved.
It is well recognized that statutes are to read sensibly rather than literally and the controlling legislative intent is to be presumed as "consonant to reason and good discretion." Schierstead v. Brigantine, 29 N.J. 220, 230, 148 A.2d 591 (1959). In construing a statute, it is assumed that the Legislature intended a reasonable approach, and a statute should be construed to effect a reasonable approach. Roman v. Sharper, 53 N.J. 338, 341, 250 A.2d 745 (1969). The spirit of the legislative direction prevails over the literal sense of the terms.
[Flaherty v. The Enclave, 255 N.J. Super. 407, 411, 605 A.2d 301 (Law Div. 1992) (citations omitted).]
This court holds that N.J.S.A. 40:55D-63 is properly interpreted to include in the protest-eligible area only that area that lies within the 200 foot perimeter.

B.
Another issue pertaining to N.J.S.A. 40:55D-63 was raised in the Dinky Woods case. The Township claims that the protest petition challenging Ordinance 94-55 was defective because of a "procedural infirmity." The facts pertaining to this issue are also undisputed.
In anticipation of the Township Council's public hearing on Ordinance 94-37, scheduled for September 26, 1994, citizens owning property within 200 feet of the Mather Avenue site signed a protest petition (the first protest petition) opposing the proposed rezoning of that site. The first protest petition was entitled in upper case letters:
"PROTEST AGAINST AMENDMENT OF WEST WINDSOR TOWNSHIP ZONING ORDINANCE WHICH WOULD AUTHORIZE DEVELOPMENT OF AN AFFORDABLE HOUSING DEMONSTRATION PROJECT ON MATHER AVENUE IN THE TOWNSHIP."
The acknowledgments at the bottom of each page of the first protest petition were dated September 25 and September 26, 1994. The first protest petition recited the history of Ordinance 94-37 *334 and the fact that while that ordinance would authorize the proposed demonstration housing as a conditional use anywhere in the R-2 zone, a pending proposal by the Planning Board would amend the ordinance to confine the demonstration housing to the Mather Avenue site. This proposed amendment, the petition recited, would create a new zoning district to be known as "R-2A Residence District (Affordable Housing)," to consist exclusively of the Mather Avenue site. The petition specified that it protested the proposed Ordinance 94-37 not only "in the form which would authorize an affordable housing demonstration project as a `conditional use' on the Mather Avenue Site" but also "in any form which would create a separate district for the Mather Avenue Site for the purpose of authorizing such a demonstration project" (emphasis added). Ordinance 94-37 was defeated by vote of the Township Council on September 26, 1994.
On October 24, 1994, a public hearing on Ordinance 94-55 proceeded as scheduled before the Township Council. Earlier that day, during regular business hours, plaintiffs had filed the first protest petition with the Township Municipal Clerk. The petition was in its original form, referring in the text to Ordinance 94-37 and the proposed amendment rather than the new Ordinance 94-55.
That same day, seeking to moot any objection the Township might have as to the form of the first protest petition, Dinky Woods collected signatures on a second petition ("the second protest petition") which referred explicitly to Ordinance 94-55. The second protest petition added nothing of substance to the text of the first protest petition. It described the subject of the protest as an ordinance which would "create an R-2A Residence District (Affordable Housing) and permit therein single-family and two-family affordable housing or demonstration housing development...."
The second protest petition was signed by all the property owners who had signed the first protest petition plus the owners of two additional properties. Two spouses of joint owners who *335 had not signed the first protest petition also signed the second petition.
At the hearing on the evening of October 24, 1994, Dinky Woods, through their attorney, presented the second protest petition to the Municipal Clerk and Township Council. The second petition was presented as an "update" of the first. The Township attorney noted "procedural defects" and advised the Council a simple majority vote was sufficient to adopt the ordinance. The Council then adopted Ordinance 94-55 by a vote of three to two.
N.J.S.A. 40:55D-63 states in relevant part that "[a] protest against any proposed amendment or revision of a zoning ordinance may be filed with the municipal clerk...." During the day on October 24, prior to the scheduled evening hearing on Ordinance 94-55, a protest petition was formally filed albeit with reference to an ordinance number that had been voted down by the Township on September 26, 1994.
While there may be instances of "procedural infirmities" which will bar protests, this is not one of them. The Township's position on this issue is a classic example of elevating form over substance. The statute contains no mandate as to form or content of the protest. There was clearly no attempt by the protestants to deceive or mislead. The timing, form and substance of the petition can lead to no other conclusion but that this protest was against a viable ordinance placed before the Township Council at the meeting of October 24, 1994. The misreference to Ordinance 94-37 instead of Ordinance 94-55 was clearly nothing more then a typographical error. The first protest petition adequately communicated the protest to the Township.
By determining that the first protest petition was sufficient to lodge the protest and compel a super-majority, this court need neither explore nor decide the secondary issue of whether the second petition was filed in a timely manner.
The plaintiffs' motions for partial summary judgment are granted; defendant's cross-motion is denied. Both matters are remanded *336 to the Township Municipal Clerk to verify the 20% protest area requirements in accordance with the methodology set forth in this opinion. Upon verification of such information, Ordinances 94-55 and 95-49 will be deemed invalid and of no effect.
NOTES
[1] The Township raised an additional issue as to the timeliness and sufficiency of Dinky Woods' filing of the protest. That issue is discussed in Section B, infra.