707 A.2d 1044

HIP OF NEW JERSEY, INC., D/B/A HIP HEALTH PLAN OF NEW JERSEY, PLAINTIFF–APPELLANT, v. NEW JERSEY DEPARTMENT OF BANKING AND INSURANCE, DEFENDANT–RESPONDENT.

PHP HEALTHCARE CORPORATION AND PINNACLE HEALTH ENTERPRISES, L.L.C., A WHOLLY OWNED SUBSIDIARY OF PHP, PLAINTIFFS/INTERVENORS–APPELLANTS.

PUBLIC INTEREST LAW CENTER OF NEW JERSEY, INC., AND NEW JERSEY CITIZEN ACTION, DEFENDANTS/INTERVENORS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued February 18, 1998—Decided March 12, 1998.

540

Before Judges PRESSLER, CONLEY and CARCHMAN.

*Andrew Samson,* argued the cause for appellant (*Wolff & Samson,* attorneys).

*Frank M. Ciuffani,* argued the cause for intervenors/appellants (*Wilentz, Goldman & Spitzer,* attorneys; *Frederick K. Becker,* of counsel; *Mr. Becker, Richard J. Byrnes* and *Michael C. Mathis,* on the brief).

*Josh Lichtblau,* Deputy Attorney General, argued the cause for respondent (*Peter Verniero,* Attorney General, attorney; *Mary Jacobson,* Assistant Attorney General, of counsel; *Mr. Lichtblau,* on the brief).

*Renee Steinhagen,* argued the cause for intervenors/respondents (*Public Interest Law Center of New Jersey, Inc.,* attorneys; *Ms. Steinhagen,* on the brief.)

The opinion of the court was delivered by

CARCHMAN, J.S.C (temporarily assigned).

This appeal requires us to determine whether an Asset Purchase Agreement and Health Services Agreement and annexed schedules (the Agreements) provided in support of an application to amend a Certificate of Authority issued by the State of New Jersey, as well as the letter approving the amendment (the Letter, or collectively, the Documents), are available to interested third-parties under the Right to Know Law, *N.J.S.A.* 47:1A–2 (RTKL), or the common-law right to know or whether they are protected by the confidentiality provisions of the Health Maintenance Organizations Act, *N.J.S.A.* 26:2J–1 to –44 (HMO Act). The Commissioner of the Department of Banking and Insurance concluded that, except for the provider agreements, the Documents were not confidential and would be released. We agree, and conclude that the Documents are not confidential under the HMO Act and fall within the scope of RTKL. Accordingly, we affirm.

## I.

The issue arises in the following factual context. In 1997, appellant HIP of New Jersey (HIP), an HMO, entered into an Asset Purchase Agreement with PHP Healthcare Corporation (PHP), a Delaware for-profit corporation, for the purchase by PHP of certain of the assets of HIP. At the same time, a Health Services Agreement was entered into between HIP and Pinnacle Health Enterprises, L.L.C. (PHE), a Delaware Limited Liability Corporation, for PHE to facilitate the administration of medical services to HIP enrollees. Neither PHE nor PHP are licensed or otherwise authorized in any capacity to provide health care services or benefits in the State of New Jersey.

These transactions required an amendment to HIP's state-issued Certificate of Authority, and approval by respondent New Jersey Department of Banking and Insurance (the Department) was, therefore, necessary. In August 1997, HIP notified the Department and the Department of Health and Senior Services (DOHSS) of its intention to seek approval from these agencies for

a modification to its Certificate of Authority as part of the sale of its assets to PHP. Along with this request, HIP submitted a copy of the Health Services Agreement.

When HIP submitted the necessary documents to the Department for approval, HIP asserted that all HIP documents related to the transaction were confidential and not public documents pursuant to *N.J.S.A.* 26:2J–3 and *N.J.A.C.* 8:38–2.7. In a letter to the Department, HIP stated that the agreement was "not to be treated as a public document but rather treated as confidential and proprietary information." Additionally, HIP, PHP and PHE [1] asserted that the Asset Purchase Agreement and Health Services Agreement must remain confidential because they set forth, in detail, the substance of HIP, PHP and PHE's business operations.

On September 23, 1997, in response to HIP's application for approval, the Department's Chief of the Managed Care Bureau (the Chief) wrote to HIP and requested a copy of the Asset Purchase Agreement, stating:

> [w]e require a copy of the agreement for review, and will maintain it as confidential since it is an integral part of the transaction with a "provider."

HIP maintains that it submitted the Asset Purchase Agreement to the Department in reliance on the Department's promise of confidentiality. Upon submission of the Asset Purchase Agreement to the Department and DOHSS, HIP again, in a letter dated September 24, 1997, stated its intention that the agreement remain confidential.

> At your request, yesterday we supplied each of you with a copy of the Asset Purchase Agreement between HIP of New Jersey, Inc. and PHP Healthcare Corporation. Since these were submitted pursuant to *N.J.S.A.* 26:2J–26, they shall not be treated as public documents, but rather as confidential and proprietary; we understand that you will treat them as such.

On October 28, 1997, HIP obtained approval of the Agreements with PHE and PHP from the Department. On December 17, 1997, the Assistant Commissioner of the Department informed

---

[1] For ease of reference, we will refer to HIP, PHP and PHE collectively as appellants unless specific reference is required.

HIP by letter that New Jersey Citizen Action (Citizen Action), a public interest group, had requested copies of all public documents relating to the transaction between appellants. The letter went on to state:

Upon review of our files, we noted that when the asset purchase agreement between PHP and HIP was submitted and when the health services agreement between PHE and HIP was submitted, HIP claimed that these documents were not public documents pursuant to *N.J.S.A.* 26:2J–26.

We do not believe that these agreements are confidential pursuant to *N.J.S.A.* 26:2J–26 or any other statute or regulation. Accordingly we intend to release the agreements and the October 28, 1997 approval letter of Commissioners Randall and Fishman to New Jersey Citizen Action on December 26, 1997. If you disagree with our position, we advise you to pursue legal recourse.

The Department maintained that all of its requests for information from HIP sought information that was required by the Department to determine whether HIP was transferring a controlling interest in its HMO to PHP or PHE and whether the transaction complied with all requirements of the HMO Act (*N.J.S.A.* 26:2J–1 to –44) and HMO regulations (*N.J.A.C.* 8:38–1.1 to –15.4). As an attachment to the Health Services Agreement, HIP had submitted various provider agreements between PHE and physicians, hospitals and other providers. The Department concluded that these provider agreements were not subject to disclosure and refused to release those documents.

By letters dated December 19 and 22, 1997, HIP requested that the Department delay the release of the documents and reconsider its position. In a letter dated December 23, 1997 to the Attorney General of New Jersey, with copies sent to the Department, the Public Interest Law Center of New Jersey (PILC)—another group expressing interest in the documentation—outlined in greater detail the documents previously requested by Citizen Action. Specifically, PILC requested copies "of any documents or correspondence evidencing the terms of the agreement between HIP and PHP." Although the Department agreed to postpone its release of the HIP documents until January 22, 1998 to allow HIP to seek judicial relief, the Department, in a December 31, 1997

letter to HIP, refused to refrain from releasing the HIP documents absent a judicial order.

HIP then filed an action in the Chancery Division seeking injunctive relief to temporarily restrain the Department from releasing the Documents. The Chancery Division judge denied plaintiff's request for relief. Plaintiff moved before us for emergent relief. We determined that the matter should properly be heard here as an appeal from the final decision of a state officer, *R.* 2:2–3(a)(2), transferred the matter, *sua sponte,* pursuant to *R.* 1:13–4(a), granted leave to intervene to PILC, Citizens Action, PHP and PHE and stayed the release of the Documents pending our decision on this appeal. Because we now affirm the decision of the Commissioner releasing the Documents, we vacate the stay.

Appellants' assertions are direct and simply stated. They argue that the Documents in issue are confidential and not subject to either RTKL or the common-law right to know. In addition they argue that the Department, having obtained the Documents pursuant to a representation that they would be considered as confidential, is estopped from denying their confidentiality and, ultimately, releasing the Documents

## II.

Our first inquiry must focus on whether the Documents are confidential. To answer this, we turn our attention to the HMO Act. The HMO Act identifies a class of contracts that is protected as confidential. *N.J.S.A.* 26:2J–26 provides:

All applications, filings and reports required under this act shall be treated as public documents and, *except contracts referred to in section 3 c.(4) and 3 c.(5)* [of *N.J.S.A.* 26:2J–3], hereof shall not be considered to be confidential.

[emphasis added.]

The following are the relevant portions of *N.J.S.A.* 26:2J–3

c. Each application for a certificate of authority shall be verified by an officer or authorized representative of the applicant, shall be in a form prescribed by the commissioner, and shall set forth or be accompanied by the following:

. . . .

(3) a list of names, addresses, and official positions of the persons who are to be responsible for the conduct of the affairs of the applicant;

(4) *a copy of any contract made or to be made between any providers or persons listed in paragraph (3) of this subsection and the applicant;*

(5) *a copy of any contract made or to be made with an insurer or a hospital or medical service corporation;*

[emphasis added.]

The statute establishes the general premise that all documents are public except those falling within the specific exceptions; i.e., contracts between an HMO and its providers, or persons "responsible for the conduct of the affairs" of the HMO. Appellants argue that the HMO Act requires that the Health Services Agreement and the Asset Purchases Agreement remain confidential because they are contracts between HIP, an HMO, and PHP/PHE, its "providers" or "persons responsible for the conduct of the affairs" of HIP. Appellants' argument is premised on their suggestion that PHE and PHP are "providers" under *N.J.S.A.* 26:2J–3(4). A review of the applicable statute and regulation does not support that view.

*N.J.S.A.* 26:2J–2h defines "provider" as "any physician, hospital, or other person which is licensed or otherwise authorized in this State to furnish health care services." The HMO regulations, *N.J.A.C.* 8:38–1.1 to –15.4, similarly define "provider" as "any physician, hospital, facility, or other person who is licensed or otherwise authorized to provide health care services or other benefits in the state or jurisdiction in which they are furnished." *N.J.A.C.* 8:38–1.2. Under *N.J.S.A.* 26:2J–2g, "person" is defined as "any natural or artificial person including but not limited to individuals, partnerships, associations, trusts or corporations."

■ Appellants argue that the Documents submitted to the Department describe a provider agreement for a group model HMO—a contract between an HMO (HIP) and its provider (PHE, for its affiliate PMG) whereunder PMG, a group of physicians licensed to practice medicine in the State of New Jersey, agrees to deliver and manage medical care to HIP's members in designated health centers. HIP claims that its group model is different than

other HMOs in New Jersey in that HIP contracts with an entity that constitutes a group of physicians rather than directly with individual physicians. The actual facts and method of operation are inconsistent with appellants' theory. Even after this transaction is implemented, appellants will still contract with a "provider" that provides medical care through its licensed physicians to HIP's members. Additionally, under the agreement, PHE agrees to contract with individual physicians, i.e. "providers," to create HIP's community network of physicians who provide medical services to HIP's members outside of the health centers. In actuality, PHE's relationship with HIP under the Agreements in question is one level removed from "provider" agreements. The Agreements in question "enable" PHE to deal with providers but do not constitute "provider agreements."

Appellants also assert that PHE and PMG are responsible for the conduct of affairs of HIP. Although HIP has not relinquished any of its authority and still maintains ultimate responsibility to its members, appellants argue that PMG, in the health centers, and PHE, in both the health centers and network, must ensure, among other things, that medical care is being properly delivered. Therefore, appellants contend that since the Agreements in question describe an arrangement creating an HMO-provider relationship or make PHE and PMG responsible for the conduct of the affairs of HIP, they must be kept confidential as mandated by *N.J.S.A.* 26:2J-26 and 26:2J-3c(3) and (4). Again, the argument is based on a faulty premise, as PHE in its relationship with HIP and PHP is one level removed from the provider agreement relationship existing between HIP and PMG.

The same conclusion must be reached regarding PHE's suggestion that it is a person or entity "responsible for the conduct of the affairs of the Applicant [HIP]," *N.J.S.A.* 26:2J-3, as they, too, are one level removed from the internal conduct and affairs of HIP. Neither PHP nor PHE is "responsible for the conduct of the affairs" of HIP. Those responsibilities rest with the internal management of HIP and its management personnel. The internal

arrangements HIP enters into with its management employees are entitled to confidentiality. The contractual arrangements with management *companies* such as PHP and PHE are not within the sphere of confidentiality envisioned by the narrow provisions of by *N.J.S.A.* 26:2J–3.

Appellants' claim of provider status as a basis of confidentiality fails on yet another ground. The HMO regulation, *N.J.A.C.* 8:38–1.2, defines provider as "any physician, hospital, facility or other person who is licensed or otherwise authorized to provide health care services or other benefits in the state or jurisdiction is which they are furnished." Neither PHP nor PHE is licensed or otherwise authorized to provide health care services in New Jersey nor do they in fact provide health care services. Neither is a "provider" under either the statute or applicable regulations. *See Butler v. Wu,* 853 *F.Supp.* 125, 130 (D.N.J.) (indicating that, under the HMO Act, a health care provider is a person or entity that "*directly* employs physicians, nurses and other health care professionals, or owns and operates a health care facility"). In sum, PHP and PHE operate at a different level in the vertical structure of this business enterprise—at the lower level, HIP and its provider agreements are protected. At the higher level, the Agreements between appellants are not so protected.

The legislative mandate in limiting the scope of confidential documents is clear and understandable. In carving out exceptions to the general rule of public accessibility to documents, the Legislature honored the traditional confidentiality of matters such as direct compensation for services and other similar issues that are addressed in a provider agreement. But beyond those limited areas of confidentiality, the Legislature has declared that other documents, such as the Agreements, shall be public records and accessible as public documents. We find nothing in our review of the HMO Act to suggest that the Agreements are confidential under *N.J.S.A.* 26:2J–26 and *N.J.S.A.* 26:2J–3c(4). We conclude that the Agreements are not confidential.

### III.

■ Appellants raise an additional issue regarding these Documents, arguing that the Chief's letter promising confidentiality a) demonstrates an administrative interpretation of the statute which is entitled to consideration, and b) estops the Department from later releasing the Agreements. Appellants' arguments are without merit. First, if we were to give any weight to the Chief's letter, it would apply only to the Asset Purchase Agreement since whatever representation was made only referred to that document. But, even if the representation applied to both Documents, we need not consider the Chief's letter as declaring any binding administrative view as to confidentiality.

We conclude that the representation made by the Chief, in a word, is wrong. Not only does the language of the statute and the regulations preclude a finding that the Asset Purchase Agreement is "part of the transaction with a 'provider,'" the Chief's view is contrary to the view of the Commissioner and not an authorized view of the Department. But there are more basic reasons for rejecting the Chief's conclusion.

■ We are not bound by the administrative construction of a statute. *See Mayflower Securities Co., Inc. v. Bureau of Securities,* 64 *N.J.* 85, 92, 312 *A.*2d 497 (1973) ("An appellate tribunal is, however, in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue."); *Castellano v. Linden Bd. of Educ.,* 158 *N.J.Super.* 350, 362, 386 *A.*2d 396 (App.Div.1978), *rev'd in part on other grounds,* 79 *N.J.* 407, 400 *A.*2d 1182 (1979). But even if we gave some deference to administrative usage, that, too, would not convince us that the Legislature intended the Documents to be confidential. Administrative interpretation of a statute may be helpful, but it must yield to a contrary legislative intent. *See Airwork Serv. Div. v. Director, Div. of Taxation,* 97 *N.J.* 290, 296, 478 *A.*2d 729 (1984), *cert. denied,* 471 *U.S.* 1127, 105 *S.Ct.* 2662, 86 *L.Ed.*2d 278 (1985); *Friends of the Dinky Woods v. West Windsor,* 291 *N.J.Super.* 325, 332, 677 *A.*2d 289 (Law Div.1996) (noting that although adminis-

trative usage may be persuasive, it must yield to legislative intent). Moreover, legal interpretations of statutes are properly made by the judiciary, not by the executive branch. *AMR Realty Co. v. State Bureau of Securities,* 149 *N.J.Super.* 329, 337, 373 A.2d 1002 (App.Div.1977).

Nor are we persuaded that the Department should be estopped from releasing the Documents. The doctrine of equitable estoppel is rarely invoked against a governmental agency and has only been applied in that context when necessary to prevent "manifest and injustice," and where it would not "hinder or prejudice essential government functions." *Garcia v. Snedeker,* 199 *N.J.Super.* 254, 264, 489 A.2d 175 (App.Div.1985) (quoting *Vogt v. Borough of Belmar,* 14 *N.J.* 195, 205, 101 A.2d 849 (1954)); *see also In re Adamar of New Jersey, Inc.,* 222 *N.J.Super.* 464, 474–75, 537 A.2d 704 (App.Div.1988). Moreover, an essential element of the application of the doctrine is missing here and that is reliance by HIP to its detriment. *O'Malley v. Department of Energy,* 109 *N.J.* 309, 537 A.2d 647 (1987). The submission of the Agreements was required by the Department as part of the review process; the suggestion, in hindsight, that a different course of action would have been taken absent confidentiality is not persuasive, and we reject any claim of estoppel.

Additionally, the Chief's representation was simply mistaken and, therefore, can not operate to bar disclosure of the Documents. *See Cipriano v. Department of Civil Serv.,* 151 *N.J.Super.* 86, 91, 376 A.2d 571 (App.Div.1997) ("Where the act in question is utterly beyond the jurisdiction of a public entity and is ultra vires, the doctrine of estoppel in the. interest of equity and essential justice has no direct application.")

Appellants claim that if the Chief's representation had not been made they may have proceeded differently. We find this assertion puzzling. HIP was seeking an amendment to its statutory grant of authority to operate as an HMO. Incumbent on HIP and the other appellants was the obligation to provide to the Department the information, materials and data necessary for the De-

partment to make a reasoned judgment as to whether the proposed sale of assets and other related transactions met statutory and regulatory requirements. We cannot accept the suggestion that appellants would withhold relevant information necessary for the Department to fulfill its statutory mandate. We must be ever mindful that the ultimate test to be applied by the Commissioner on an application for a Certificate of Authority or even an amendment to the Certificate is that "nothing in the proposed method of operation, as shown by the information submitted pursuant to section 3 hereof or by independent investigation, is *contrary to the public interest.*" *N.J.S.A.* 26:2J–4(b)(5) (emphasis added). We cannot accept the suggestion that any less information would have been supplied, either voluntarily or upon the request of the Commissioner, absent the Chief's letter.

### IV.

Appellants argue that there is no basis for release of the documents under RTKL or the common law right to know. We need only address the former since we find that it is dispositive of the issue before us.

RTKL, *N.J.S.A.* 47:1A–2, states in relevant part:

Except as otherwise provided ... all records which are required by law to be made, maintained or kept on file by any board, body, agency, department, commission, or official ... shall, for the purposes of this act, be deemed to be public records. Every citizen of this State, during the regular business hours maintained by the custodian of any such records, shall have the right to inspect such records.

Having determined that the Agreements and letter are not confidential under the HMO Act, *N.J.S.A.* 26:2J–1 to –44, we conclude that they are not afforded protection under the "otherwise provided" provision of RTKL, *N.J.S.A.* 47:1A–2.

Appellants argue that even if the Documents are not confidential under the HMO Act, they do not fall within the ambit of RTKL because they are not documents "required to be made, maintained or kept on file" by the Department. Statutory construction is to the contrary.

Our analysis of the availability of these Documents under RTKL starts with a recognition that our Legislature and courts have continually recognized the commitment to public participation in government and "the need for an informed citizenry," *South Jersey Publishing Co., Inc. v. New Jersey Expressway Auth.,* 124 *N.J.* 478, 487, 591 *A.*2d 921 (1991). As we recently observed, New Jersey has a "strong commitment to access to public records," whether by statute or under the common law. *Paternoster v. Shuster,* 296 *N.J.Super.* 544, 562, 687 *A.*2d 330 (App.Div.1997); *see also Nero v. Hyland,* 76 *N.J.* 213, 221, 386 *A.*2d 846 (1978) (recognizing that the purpose of RTKL is "the salutary one of promoting a free flow of information in order to ensure an informed citizenry").

■ The phrase "records which are required by law to be made, maintained or kept on file" includes documents that are specifically required by law to be submitted to a government agency. *Kuehne Chemical Co, Inc. v. North Jersey Dist. Water Supply Comm'n.,* 300 *N.J.Super.* 433, 440, 693 *A.*2d 168 (App. Div.), *certif. denied,* 151 *N.J.* 466, 700 *A.*2d 878 (1997) ("When a statute or regulation requires a document to be submitted by a citizen to the government, that submission qualifies as a public record."); *see also Irval Realty, Inc. v. Board of Public Utility Commissioners,* 61 *N.J.* 366, 375, 294 *A.*2d 425 (1972) (holding that reports submitted to Board of Public Utility Commissioners by gas company "are certainly public records within this definition since regulation of the Board [by applicable agency regulations] has the force of law and requires that such reports be made").

■ HIP sought the approval of the Department and DOHSS to modify its Certificate of Authority. Accordingly, under the HMO Act and its regulations, *N.J.A.C.* 8:38–1.1 to –15.4, HIP was required to submit an extensive list of documents as part of its application. Some of these documents were listed in the HMO Act as required for the application, and some were requested by the Department and, therefore, required by law, as authorized

under *N.J.S.A.* 26:2J–3c(16).[2]  Included in the mandated docu-
ments are those required by the HMO regulations concerning
changes in ownership interests.  *See N.J.A.C.* 8:38–2.9 ("[A]ny
proposed transaction or proposed series of transactions which
would result in a change in ownership interests held by one party
or entity or an affiliated group of parties or entities, of 10 percent
or greater shall ... require the filing of an amendment to the
certificate of authority.").  Given that the proposed amendment to
the Certificate of Authority was based on a sale of assets and a
change in the operating structure of HIP, we find it obvious that
the operative Agreements governing the transaction would be the

---

[2] *N.J.S.A.* 26:2J–3(c) states in relevant part:

c.  Each application for a certificate of authority shall be verified by an
officer or authorized representative of the applicant, shall be in a form
prescribed by the commissioner, and shall be sent forth or be accompanied
by the following:

(1) a copy of the basic organizational document of the applicant such as
the articles of incorporation, articles of association, partnership agreement,
trust agreement, or other applicable documents, and all amendments there-
to;

(2) a copy of the bylaws, rules and regulations, or similar document
regulating the conduct of the internal affairs of the applicant;

(3) a list of the names, addresses, and official positions of the persons who
are to be responsible for the conduct of the affairs of the applicant;

(4) a copy of any contract made or to be made between any providers or
persons listed in paragraph (3) of this subsection and the applicant;

(5) a copy of any contract made or to be made with an insurer or a
hospital or medical service corporation;

(6) a statement generally describing the health maintenance organization,
its facilities, and personnel;

(7) a copy of the form of evidence of coverage to be issued to the
enrollees;

(8) a copy of the form of the group contract, if any, which is to be issued
to employers, unions, trustees, or other organizations;

(9) recent financial statements showing the applicant's assets, liabilities,
and sources of financial support;

(10) a general description of the proposed method of marketing and
financing and a statement as to the sources of funding;

. . . .

(16) such other information as the commissioner may require to make the
determinations required by section 4 [*N.J.S.A.* 26:2J–4] hereof.

agreements necessary for the Commissioner to make an informed and reasoned judgment on the application. Appellants suggestion that the Documents are not within the contemplation of the statute is too narrow a view. The Agreements are not simply ancillary writings but are the breath and life of the transaction. *But see, e.g., Higg–A–Rella, Inc. v. County of Essex,* 141 *N.J.* 35, 660 A.2d 1163 (1995) (computerized tax lists are not required by law to be made or maintained); *Home News Publishing Co. v. State,* 224 *N.J.Super.* 7, 11, 539 *A.*2d 736 (App.Div.1988) (reports made by Parole Board and Bureau of Parole not required by law to be prepared); *Collins v. Camden County Dept. of Health,* 200 *N.J.Super.* 281, 491 *A.*2d 66, (Law Div.1984) (written record of applicant evaluations made by personnel screening committee not required by law to be created). To say that they are an integral part of the transaction understates the issue; they provide the structure of the transaction. They are the transaction itself. The Agreements fall well within the scope of records required by law to be maintained or kept on file by the department.

■ We further reject appellants' claims of harm that will befall them if the Documents are made public. The issue of harm is more properly addressed in considering the balancing test under the common law right to know, *Keddie v. Rutgers, State University,* 148 *N.J.* 36, 50, 689 *A.*2d 702 (1996); *Loigman v. Kimmelman,* 102 *N.J.* 98, 505 *A.*2d 958 (1986), but we will address the claim in reference to RTKL. Here, appellants suggest, among other things, that the Agreements contain proprietary information and trade secrets which preclude release not only under the common law right to know but under RTKL. We first observe that the Asset Purchase Agreement was submitted by PHP, albeit without schedules, to the Securities and Exchange Commission. The schedules themselves include "in general terms, assignments of contracts with providers, goodwill allocations, and other detailed financial information" relating to the transfer of HIP's charitable assets to PHP. The Health Services Agreement is a document outlining the management agreement between appellants. The

information contained in the agreement delineates the services PHP and PHE will provide to HIP's members and sets forth "information with respect to the pricing of services," including "internal pricing of medical care, . . . utilization management criteria and delegation, . . . [and] the specific capitation amounts negotiated by the parties."

Lastly, the letter approving the amendment contains a summary of the transactions between appellants and includes "information with respect to the range of capitation percentage to be paid by PHE to HIP" and a "figure representing the percentage of assets that the Department believes PHE [acquired] from HIP."

The HMO Act does not provide for disclosure exemptions for trade secrets or proprietary information. Other statues do contain such exemptions. *See, e.g., N.J.S.A.* 2A:84A–26 (evidentiary trade secret privilege); *N.J.S.A.* 34:5A–15 (limited trade secret protection under Worker and Community Right To Know Law); *N.J.S.A.* 42:2B–25(c) (trade secret exemption given to manager of limited liability company). We first observe that we cannot create such an exemption where the Legislature, by its silence, has not created one. But there is a more fundamental reason for rejecting appellants' trade secret or proprietary claim. The documentation and information transmitted to the Department in the Agreements and to appellants in the Letter goes to the essence of the analysis of whether the proposed amendment to the Certificate of Authority, that is the transaction itself, is not "contrary to the public interest." The information included in the schedules— financial, managerial and pricing—are matters which the public has a right to know and should know.

The changing landscape of the medical profession and medical industry requires that the public, more than ever, has available to it those facts and information which will bear directly on their well-being and ultimately on the delivery of medical services. Included within the public's right and need to know is the element of cost, a critical and complex element of this ever-growing complex industry. HIP, with almost 200,000 members has been

an important player in meeting the medical needs of the New Jersey public. The dramatic shift of assets from a non-profit medical provider to a profit making entity requires close scrutiny by not only the Department but by the public as well. We conclude that the Documents fall within the letter and spirit of RTKL and the Commissioner's decision to release these documents was not error.

Our conclusion that the Commissioner properly authorized release of the Documents under the Right to Know Law obviates the necessity of addressing the claim for release under the common law right to know.

We hold that the public's right to know the information contained in the Agreements, excluding the provider agreements, transmitted to the Commissioner for the amendment to the Certificate of Authority together with the Letter of Approval is not entitled to confidentiality under the HMO Act and is subject to disclosure under RTKL, *N.J.S.A.* 47:1A–2. The determination of the Commissioner to authorize release of the Documents was correct.

Accordingly, we affirm and vacate the stay previously entered.